# FILED

JAN 2 8 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
        DEPUTY CLERK

2 10 - CV - 0 2 3 3  FCD JFM PS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY S MOORE
(Name of Plaintiff)
3740 Roselle Ave
(Address of Plaintiff)
Oceanside, CA 92056

CN241210
(Case Number)

vs.

**COMPLAINT**

City of San Marcos
San Marcos Sheriff's Dept.
David Robbins / JEFFREY CRUZ
(Names of Defendants)

I. Previous Lawsuits:

A. Have you brought any other lawsuits while a prisoner:  ☐ Yes  ☒ No

B. If your answer to A is yes, how many?: _None_ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff _None_

Defendants _None_

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983          Rev'd 5/99

- 2 -

2. Court (if Federal Court, give name of District; if State Court, give name of County)

_N/A_

3. Docket Number _N//A_

4. Name of judge to whom case was assigned _N//A_

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
   _N//A_

6. Approximate date of filing lawsuit _N//A_

7. Approximate date of disposition _N//A_

II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution?   ☐ Yes   ☑ No

B. Have you filed a grievance concerning the facts relating to this complaint?

   ☐ Yes   ☑ No

   If your answer is no, explain why not _N//A_

C. Is the grievance process completed?   ☐ Yes   ☑ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant _David Robbins /JEFFREY Cruz_ is employed as _Sheriff's Deputies_ at _San Marcos Sheriff's Department_

B. Additional defendants _There was a third officer on 1-27-08 who's name is not on the report._

4

## IV.    Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

On 1-27-08 I was accused of burglary. One of the officers said I was a 4th waiver. I told them they could not search my truck, which was parked in the parking lot of Albersons. The 3rd officer said he remembered me from a previous arrest. I have never seen him before. I did file a complaint with the Citizen Law Enforcement Review Board. They said I told them that my car was parked across the street. I had started shopping but didn't get a chance to finish. Included is a copy of the arrest report.

## V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

I want my conviction over turned and the San Marcos Sheriff's Dept under investigation.

Signed this 23rd day of December , 2009 .

Jeffry S Moore
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

12-23-09
(Date)

Jeffry S Moore
(Signature of Plaintiff)

5

BOARD MEMBERS
•ROBERT WINSTON
Chair
OTTO EMME
Vice Chair
PATRICK HUNTER
Secretary
EDDIE CASTORIA
KOUROSH HANGAFARIN
THOMAS INIGUEZ
MARK MARCHAND
ALLEN MILIEFSKY
GLENN QUIROGA
DON WARFIELD
LOUIS WOLFSHEIMER



EXECUTIVE OFFICER
JOHN PARKER

# County of San Diego

## CITIZENS' LAW ENFORCEMENT REVIEW BOARD

1168 UNION STREET, SUITE 400, SAN DIEGO, CA 92101-3819
TELEPHONE: (619) 516-6029    FAX: (619) 238-6775
www.sdcounty.ca.gov/clerb

April 14, 2006

Jeff Moore
608 Borden Rd.
San Marcos, CA 92069

Dear Mr. Moore:

### CLERB FINAL REPORT: CASE NO. 05-170/MOORE

On April 11, 2006, the Review Board approved findings as reported in the attachment pursuant to CLERB Rules and Regulations. The basis for the approved findings are outlined in a confidential report previously distributed to the Review Board. Notice of these dispositions have been sent to the Chief Administrative Officer and to the Sheriff or Chief Probation Officer pursuant to the County of San Diego Administrative Code No. 7880, Section 340.9(e).

Should you have any questions, please feel free to contact Investigator Joseph Garcia at (619) 238-6764.

Sincerely,

JOHN PARKER
Executive Officer

JP/vlo
Attachment

cc:    CLERB Register

## DESCRIPTION OF INCIDENT
**(Attach additional sheets. Number pages as needed and sign bottom of each added page.)**

The complainant stated that he was just walking down a street in San Marcos when an unknown deputy came from the opposite direction, did a u-turn and started harassing him. The deputy asked the complainant if he wanted a ride to Vista, which he refused. The deputy then asked if he could check the complainant. The complainant felt intimidated enough to give consent. The deputy discovered a firearm and the complainant was charged with possession of a loaded firearm, since the bullet was accessible to the weapon. The complainant stated that after he was placed into the patrol car, the deputy communicated with someone via e-mail. The complainant believed the correspondence was personal in nature because the deputy attempted to darken the screen but he was able to read, "I got one" and "it figures".

**SWORN STATEMENT OF COMPLAINANT: I hereby certify that, to the best of my knowledge, and under penalty of perjury, the statements made herein are true.**

| Signature | Print Name | Date |
|---|---|---|
|  |  |  |

Page ___ of ___

**BOARD MEMBERS**
**·ROBERT WINSTON**
Chair
**OTTO EMME**
Vice Chair
**PATRICK HUNTER**
Secretary
**EDDIE CASTORIA**
**KOUROSH HANGAFARIN**
**THOMAS INIGUEZ**
**MARK MARCHAND**
**ALLEN MILIEFSKY**
**GLENN QUIROGA**
**DON WARFIELD**
**LOUIS WOLFSHEIMER**



**EXECUTIVE OFFICER**
**JOHN PARKER**

# *County of San Diego*

## *CITIZENS' LAW ENFORCEMENT REVIEW BOARD*

1168 UNION STREET, SUITE 400, SAN DIEGO, CA 92101-3819
TELEPHONE: (619) 515-6029   FAX: (619) 238-6775
www.sdcounty.ca.gov/clerb

April 14, 2006

Jeff Moore
608 Borden Rd.
San Marcos, CA 92069

Dear Mr. Moore:

### **CLERB FINAL REPORT: CASE NO. 05-170/MOORE**

On April 11, 2006, the Review Board approved findings as reported in the attachment pursuant to CLERB Rules and Regulations. The basis for the approved findings are outlined in a confidential report previously distributed to the Review Board. Notice of these dispositions have been sent to the Chief Administrative Officer and to the Sheriff or Chief Probation Officer pursuant to the County of San Diego Administrative Code No. 7880, Section 340.9(e).

Should you have any questions, please feel free to contact Investigator Joseph Garcia at (619) 238-6764.

Sincerely,

JOHN PARKER
Executive Officer

JP/vlo
Attachment

cc:   CLERB Register

## DESCRIPTION OF INCIDENT
**(Attach additional sheets. Number pages as needed and sign bottom of each added page.)**

The complainant stated that he was just walking down a street in San Marcos when an unknown deputy came from the opposite direction, did a u-turn and started harassing him. The deputy asked the complainant if he wanted a ride to Vista, which he refused. The deputy then asked if he could check the complainant. The complainant felt intimidated enough to give consent. The deputy discovered a firearm and the complainant was charged with possession of a loaded firearm, since the bullet was accessible to the weapon. The complainant stated that after he was placed into the patrol car, the deputy communicated with someone via e-mail. The complainant believed the correspondence was personal in nature because the deputy attempted to darken the screen but he was able to read, "I got one" and "it figures".

| SWORN STATEMENT OF COMPLAINANT: I hereby certify that, to the best of my knowledge, and under penalty of perjury, the statements made herein are true. | | |
|---|---|---|
| Signature | Print Name | Date |
| | | |

1 | BONNIE M. DUMANIS
District Attorney
2 | CHANDELLE KONSTANZER, SBN 253224
Deputy District Attorney
3 | 325 South Melrose, Suite 5000
Vista, CA 92081-6691
4 | Tel. (760) 806-4059
Attorney for Plaintiff
5

6

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION

9 | THE PEOPLE OF THE STATE OF CALIFORNIA, | Case No: CN241210

10 | Plaintiff,

11 | v. | **PEOPLE'S TRIAL BRIEF;
WITNESS LIST; EXHIBIT LIST;
MOTIONS IN LIMINE**
12

13 | JEFFREY SHERROD MOORE, | Date: 6/9/09
Time: 8:45 a.m.
14 | Defendant | Dept: 5

15

16 |     Comes now the Plaintiff, the People of the State of California, by and through

17 | their attorneys, BONNIE DUMANIS, District Attorney, and CHANDELLE KONSTANZER,

18 | Deputy District Attorney, and respectfully submits the following: People's Trial Brief, Witness

19 | List, Exhibit List, and Motions in Limine.

20

21

22 | **I
SYNOPSIS**

23 | **A. CHARGES**

24 |     **a.** Count One: Penal Code § 459 – Burglary (Date of Offense, January 27, 2008)

25 |     **b.** Count Two: Penal Code § 484 with a Penal Code §666 allegation – Petty Theft,

26 |         with a Prior (Date of Offense, January 27, 2008)

27 |     **c.** Count Three: Penal Code § 459 with a Penal Code § 12022.1(b) allegation –

28 |         Burglary while released on Bail (Date of Offense, January 31, 2008)

29 |     **d.** Count Four: Penal Code § 484 with a Penal Code §666 allegation – Petty Theft,

1
PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

1         with a Prior (Date of Offense. January 31, 2008)

2       **e.** Count Five: Penal Code 459 with a Penal Code 12022.1(b) allegation – Burglary

3         while released on Bail (Date of Offense, February 1, 2008)

4       **f.** Count Six: Penal Code § 484 with a Penal Code § 666 allegation – Petty Theft

5         with a Prior (Date of Offense, February 1, 2008)

6       **g.** Count Seven: Penal Code 459 with a Penal Code 12022.1(b) allegation – Burglary

7         while released on Bail (Date of Offense, September 25, 2008)

8       **h.** Count Eight: Penal Code § 484 with a Penal Code § 666 allegation – Petty Theft

9         with a Prior (Date of Offense, September 25, 2008)

10 **B. LOCATIONS OF OFFENSES**

11       **a.** Counts One and Two were committed at Albertson's located at 151 Woodland

12         Parkway, San Marcos, California, on January 27, 2008.

13       **b.** Counts Three and Four were committed at Albertson's located at 1570 West

14         Valley Parkway, Escondido, California, on January 31, 2008.

15       **c.** Counts Five and Six were committed at Albertsons located at 1929 West San

16         Marcos Blvd, San Marcos, California, on February 1, 2008.

17       **d.** Counts Seven and Eight were committed at Stater Bros. located at 3770 Mission

18         Avenue, Oceanside, California, on September 25, 2008.

19

20 **II**

21 **PROCEDURAL HISTORY**

22 Case No. CN241210 (Commercial Burglaries Jan 27, Jan 31, Feb 1, 2008)

23       On February 8, 2008, the District Attorney's Office filed a complaint against

24 Defendant alleging violations of Penal Code sections 459, 484/666 for an incident that occurred

25 on January 27, 2008, and Penal Code sections 459, 484/666 and PC12022.1(b) for two separate

26 incidents that occurred on January 31, 2008, and February 1, 2008. Defendant was arraigned

27 and the case was set for readiness on February 22, 2008.

28       On February 26, 2008, in lieu of a preliminary hearing, both parties stipulated to a

29 bind over. Defendant was immediately arraigned on the information. The case was set for jury

1    trial on April 16. 2008. That jury trial date was continued several times and is now set for June

2    9, 2009.

3    Case No. CN251586 (Commercial Burglary of September 28, 2008

4            On October 3, 2008. the District Attorney's Office filed a complaint against

5    Defendant alleging violations of Penal Code sections 459, 484/666, and PC12022.1(b)

6    stemming from an incident which occurred while case CN241210 was pending. On November

7    3, 2008, once again the parties stipulated to a bindover. Defendant waived time on this case and

8    set the case to trail case CN241210.

9    Penal Code§ 666 allegation

10           Additionally, Defendant suffered three prior convictions that are the basis for the

11    Penal Code § 666 allegation attached to Counts 2, 4, 6 and 8. The following outline those prior

12    convictions, and a certified copies of each will be provided at trial.

13           On March 16, 1999, Defendant pled guilty to Penal Code § 666-484, Petty theft

14    with a Prior, in case number CN094004.

15           On August 13, 1998, Defendant pled guilty to Penal Code § 666-484 17(b)(4),

16    Petty Theft with a Prior, in case number M761481.

17           On August 5, 1997, Defendant pled guilty to Penal Code § 484-490.5, Petty Theft,

18    in case number CN062037.

19

20                          **III**

                   **STATEMENT OF FACTS**

21   **Charged Offenses**

22           Defendant was suspected of stealing liquor and various other products from

23    Albertson's locations in North County San Diego. These suspicions were substantiated on

24    January 27, 2008 when Defendant was arrested for shoplifting liquor at the Albertson's located

25    at 151 Woodland Pkwy. San Marcos. (CN241210 counts 1 and 2). Wearing baggy pants and an

26    oversize Carolina Panther's jersey, Defendant entered Albertson's and was observed by store

27    personnel concealing bottles of alcohol in his pants. Sheriff's Deputies arrived and contacted

28    Defendant who admitted that he had put alcohol in his pants and started to walk out of the store.

29    Before leaving the store Defendant believed someone was watching him so he removed the

1  bottles. A search of Defendant's vehicle yielded 36 bottles of alcohol.

2  Three days later, and after having been released on bail, Defendant was arrested
3  again for shoplifting liquor at the Albertson's located at 1570 West Valley Parkway, Escondido.
4  (CN241210 counts 3 and 4). As before, Defendant entered wearing baggy jeans and an oversize
5  Carolina Panthers jersey and concealed bottles of alcohol in his pants. When Officers contacted
6  Defendant, he consented to being searched and Officers removed four bottles of alcohol from
7  Defendant's waistband.

8  On February 1, 2008, the very next day and again after been released on bail.
9  Defendant was arrested for shoplifting liquor a third time at the Albertson's located at 1929
10 West San Marcos Blvd. (CN241210 counts 5 and 6). Like before, Defendant entered
11 Albertson's wearing baggy jeans and the oversize jersey. He concealed alcohol in his clothes.
12 When the police arrived they saw Defendant as he exited the store. Defendant ran back inside to
13 the back of store discarding bottles of alcohol as he ran.

14 On September 25, 2008, while pending trial on CN241210, Defendant entered
15 Stater Bros. Grocery Store located at 3770 Mission Avenue, Oceanside. (CN251586). Once
16 again, Defendant, wearing baggy pants and a jersey, concealed bottles of alcohol in his clothing.
17 Once outside, Defendant was contacted by police. He was placed under arrest and four bottles
18 of alcohol were found concealed in his pants.

19 **Uncharged Offenses**

20 After Defendant's arrest on January 27, 2008, Albertson's Organized Retail
21 Crimes Specialists conducted an investigation into Defendant's activities at Albertson's grocery
22 stores. They interviewed store associates at the stores defendant regularly visited and reviewed
23 Albertson's CCTV for a time period spanning 90 days prior to Defendant's arrest.

24 CCTV from Alberton's located on Marron Road, revealed Defendant was stealing
25 on several dates, all of which occurred on a Monday just after 10:00 p.m. In each instance,
26 Defendant follows roughly the same course of action. While wearing a Carolina Panthers
27 Jersey, Defendant is observed in the liquor aisle where he selects liquor off the shelf and refaces
28 the liquor so it appears no liquor has been taken. In each instance, he is next observed walking
29 behind the same center display and concealing the liquor in his jeans. It appeared that he used

4

1   the waistline of the jeans to hold the liquor against his body. He stocked his pants with four or
2   five bottles - one or two bottles at a time. At the same time he is observed furtively glancing
3   around the liquor aisle. After his pants are stocked with four of five bottles of liquor, Defendant
4   exited camera view. On each date, Defendant entered and exited the liquor area of the store
5   from 2 to 10 times.

6   1. December 10, 2007 at approximately 10:20 p.m.

7   2. December 17, 2007 at approximately 10:30 p.m.

8   3. December 30, 2007 at approximately 10:00 p.m.

9   4. January 7, 2008 at approximately 10:20 p.m.

10   5. January 14, 2008 at approximately 10:20 p.m.

11           At the Alberton's located on West Valley Parkway, Escondido, Defendant is
12   observed on CCTV on 9 separate dates. Defendant's acts are roughly the same in this store as in
13   the others. Again, Defendant always wore baggy jeans and a Carolina Panthers Jersey. CCTV
14   captures him in the liquor aisle with a grey hand basket. He selected liquor off the shelf;
15   however, he is not seen concealing the liquor on CCTV. He is observed entering and exiting the
16   liquor department to select more liquor between one and eight times per visit.

17           Additionally, Defendant was spotted concealing liquor and exiting the store on
18   January 29, 2008 by loss prevention officer Rossell Valerio. Valerio called the police as soon as
19   he observed Defendant's crime, but San Diego Sheriffs arrived too late and could not apprehend
20   Defendant. According to Valerio, Defendant selected several bottles of liquor and exited the
21   store without paying. Defendant was again wearing a Carolina Panthers Jersey. Footage from
22   CCTV shows that Defendant was in the liquor aisle again on that date.

23

24                                              IV

25                                           TRIAL

26   **A. Witness List**

27   1. Rossell Valerio (Albertson's Loss Prevention Officer, Store #6708, 151 Woodland Pkwy,
28       San Marcos, CA) – Mr. Valerio concealed a camera in a crayon box and obtained
29       surveillance film of defendant concealing alcohol in his clothing. He summoned law

1    enforcement to Albertsons and placed defendant under citizen's arrest on January 27,

2    2008. He is also custodian of record for the surveillance video from the incidents which

3    occurred on January 27th and 31st.

4    2. Jeffery Cruz (San Diego Deputy Sheriff) – Deputy Cruz arrested Defendant on January

5    27, 2008 at the Albertson's at 151 Woodland Pkwy, San Marcos. CA. He will testify as

6    to his observations and arrest.

7    3. Dawn Patterson (San Diego Deputy Sheriff) – Deputy Patterson assisted Deputy Cruz in

8    Defendant's January 27 arrest.

9    4. Jeffrey Dodds (Escondido Police Officer) – Responded on January 31, 2008 at 1300

10   hours to take a report re: defendant's shoplifting at the Albertson's located at 1570 West

11   Valley Pkwy, Escondido, CA. Officer Dodds did not arrest the Defendant.

12   5. Officer R. Gay (Escondido Police Officer) – Responded to the Albertsons at 1570 West

13   Valley Parkway in Escondido at 10:38 p.m. on January 31, 2008 and arrested defendant

14   for shoplifting.

15   6. Elizabeth Volz (Albertson's Manager at 1570 West Valley Parkway) – She can testify as

16   to what she saw on January 31, 2008. She will also testify that she knew Defendant from

17   his regular prior contacts at the store.

18   7. David Robbins (San Diego Deputy Sheriff) – Arrested Defendant on February 1, 2007 at

19   the Albertson's located at 1929 West San Marcos Blvd., San Marcos, CA.

20   8. Troy Eric Ludwig (Albertson's store manager in San Marcos) – He called the police just

21   prior to Defendant getting arrested in the San Marcos store.

22   9. Peter Gavin (Albertson's Loss prevention Officer in San Marcos and Oceanside) – He is

23   the custodian of record for the surveillance video obtained from those locations.

24   10. Mike Vega (Albertson Store Director in San Marcos) – Reviewed CCTV from the San

25   Marcos incident dated 2/1/2008 with Deputy David Robins.

26   11. Shannon Land (Albertson's Store Associate at 151 Woodland Parkway in Escondido,

27   CA) – Defendant made admissions to her regarding his thefts.

28

29

6
.PEOPLE'S TRIAL BRIEF; EXHIBIT LIST: WITNESS LIST; MOTIONS IN LIMINE

1    12. Renee Bernard (Albertson's Store Manager at 3450 Marron Road. Oceanside, CA) – She
2         will testify that Defendant has been entering her store for four years between 10:00 p.m.
3         and midnight.

4    13. Jennifer Bailey (Organized Retail Crime Specialist, Albertsons) – Ms. Bailey is a
5         custodian of record for Defendant's preferred membership card.

6    14. Jose Rendon Jr. (manager of Stater Bros) – Mr. Rendon observed Defendant concealing
7         alcohol in his store and called the police.

8    15. Officer M. Fullen (Oceanside PD) – Officer Fullen arrested Defendant on September 25,
9         2008 at the Stater Bros store and located 4 bottles of alcohol in his pants.

10   16. Celeste Madruga (fingerprint analyst)

11

12   **B. Exhibit List**

13   1.   Some or all video footage of Defendant and any still photos taken of Defendant the nights
14   of the incidents. Surveillance video is from Albertsons Stores located at 151 Woodland Pkwy,
15   San Marcos, CA; 1929 West San Marcos Blvd., San Marcos, CA; 1570 West Valley Parkway,
16   Escondido, CA; and, 3450 Marron Road, Oceanside, CA.

17   2.   Photographs of the interior and exterior of the store listed above as well as Stater Bros
18   located at 3770 Mission Avenue, Oceanside

19   3.   Floor plans of Albertsons and Stater Bros.

20   4.   Photographs of items seized from Defendant's vehicle and Defendant's person including
21   bottles of alcohol, football jerseys, DVDs, a mask, a knife. a wallet.

22   5.   Photographs of discarded alcohol within Albertson's

23   6.   Copy of receipts showing value of alcohol

24   7.   Copy of bulletin about Defendant created by Albertson's Loss Prevention Corporate Office

25   8.   Documents showing Defendant's preferred membership card activity.

26   9.   Certified copies of Defendant's Mug Shot Profile-Facecards and History of Inmate Sheets

27   10.  Certified copies of Defendant's prior conviction and booking packet

28   11.  Copy of fingerprint analysis

29   12.  Certified Copy of vehicle registration of Defendant's silver Acura

7

13. Certified copy of Defendant's RAP sheet (impeachment)

C. In Limine Motions

1. **To exclude all potential witnesses during the pendency of the trial while those witnesses are not testifying. (Evid. Code §777).**

2. **To exclude any reports, statements or other evidence to be used by defendant at trial that were not timely provided pursuant to Penal Code §§1054.3 and 1054.7. Alternatively, the People request a brief continuance/delay to enable the prosecutor to review the evidence and produce a meaningful cross-examination or response.**

3. **To Include defendant's statements to any of the witnesses during the investigation of these theft incidents pursuant to Evidence Code section 1220.** The People are entitled to offer any statement by Defendant. The only requirement is that it complies with the procedural safeguards of *Miranda v. Arizona*, 384 U.S. 4365 (1966). There is no requirement that the statement be an admission of guilty of any kind.

    i. Defendant's statements to law enforcement on January 27, 2009 and January 31, 2009 were not in violation of *Miranda* and should be admitted.

    Miranda warnings are only required when a person is subjected to custodial interrogation, *People v Mickey*, (1991) 54 Cal.3d 612,648. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," *Yarborough v. Alvarado*, (2004) 541 U.S. 652. When a person is subjected to questioning where there has been no formal arrest, the custodial issue turns on "how a reasonable person in the suspect's position would have understood his situation," *Berkemer v. McCarty*, (1984) 468 U.S. 420, 442. Police officers are not required to administer Miranda warnings to everyone whom they question.

1   Miranda warnings are required only where there has been such a restriction on a person's

2   freedom as to render him "in custody", *Oregon v. Mathiason*, (1977) 429 U.S. 492, 495.

4       It is well established that Miranda warnings are not required where a person is

5   temporarily detained for brief questioning by police. (*People v. Hill* (1974) 12 Cal.3d 731, 767;

6   *People v. Vasquez* (1993) 14 Cal.App.4th 1158, 1162-1164; *People v. Manis* (1969) 268

8   Cal.App.2d 653, 669.) A temporarily detained suspect is not in custody for Miranda purposes

9   regardless of whether officers have an uncommunicated intent to arrest supported by probable

10  cause. (*Berkemer v. McCarty* (1984) 468 U.S. 420, 442; *People v. Bellomo* (1992) 10

12  Cal.App.4th 195, 199-200; see also, *Stansbury v. California* (1994) 511 U.S. 318.)

13      In *In re Joseph R.* (1998) 65 Cal.App.4th 954, an officer detained a minor, put him

14  in handcuffs, and told him to sit in the back of a patrol car. The officer carried on another part

16  of his investigation. He returned after about five minutes, released the minor from the patrol

17  car, and removed the handcuffs. The minor then made admissions in response to the officer's

18  questions without benefit of the Miranda warnings. The appellate court affirmed the judgment

20  of conviction, holding that the questioning was not custodial. (*Id. at p. 961.*)

21      "When circumstances demand immediate investigation by police, the most useful,

22  the most available tool for such investigation is general on-the-scene questioning, designed to

24  bring out the person's explanation or lack of explanation of the circumstances which aroused the

25  suspicion of the police, and enable the police to quickly determine whether they should allow

26  the suspect to go about his business or hold him to answer charges." (*People v. Manis*, supra,

28  268 Cal.App.3d at p. 665; *People v. Haugland* (1981) 115 Cal.App.3d 248, 256.)

29      In the present case, the Defendant was detained by the police on January 27, 2008,

9

PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

and January 31, 2008, in the course of investigation. During the January 27th detention, Deputy Cruz asked that Defendant stop and talk with him. He asked that Defendant have a seat on the cement pillar near where they were standing. Defendant was asked for identifying information, as well as a simple inquiry as to "what was going on?" This was general, on-the-scene questioning in response to a call regarding a shoplifting in progress at that particular location. The answers given by Defendant elicited further investigation by the deputies. When the deputy inquired as to where Defendant had parked, Defendant lied and stated that his vehicle was not on the premises. Upon the Loss Prevention Officer's declaration that an Acura parked on the premises belonged to Defendant, Deputy Cruz confirmed that the Acura was registered to Defendant. It was at that time Defendant was placed in the patrol car, and Deputy Cruz conducted other parts of his investigation. Following the citizen arrest by the Loss Prevention Officer, who signed a citizen's arrest declaration, Defendant was placed under arrest. The statements given to the deputies were prior to arrest while Defendant was being detained during the investigation, and did not rise to the level of custodial interrogation that requires Miranda warnings.

Similarly, on January 31, 2008, officers were called to a burglary in progress. During the investigation, officers attempted to make contact with Defendant, who had exited the store, turned around, and walked back inside. At that time, officers followed Defendant back into the store, placed him in handcuffs, and explained that Defendant was not under arrest but was being detained until they could investigate the radio call. At this time, Officer Gay asked Defendant if he had anything illegal on his person. Defendant stated "I have some alcohol." Again, Officer Gay's questions was a generalized statement by police designed to bring out a

person's explanation of the circumstances which aroused suspicion. The questions by Officer Gay were in the course of the immediate investigation of the suspected burglary. The detention of the defendant did not amount to a custodial interrogation which required police to Mirandize Defendant.

Courts look to a totality of the circumstances to determine whether a statement was voluntary, *Withrow v. Williams, (1993)507 U.S. 680, 694.* Statements must be neither intimidating nor "so coercive as to overcome defendant's free will or constitute 'a motivating cause' of his subsequent confession, *People v. Kelly, (1990) 51 Cal.3d 931, 952-953.* In the present case, and with respect to the January 27th detention, Defendant voluntarily responded to law enforcement that he had concealed bottles of alcohol in the front of his pants, but had removed them because he "felt as though someone was watching him". This was in response to a simple question by the deputy, "what's going on?" Similarly, on January 31st, Officer Gay asked the defendant a simple question regarding whether Defendant had "anything illegal" on his person during the investigative detention of Defendant. Again, Defendant voluntarily stated that he had bottles of alcohol on him. In both instances, there was no coercion on the part of either Deputy Cruz or Officer Gay in asking these simple investigative questions. The defendant's free will was not overcome, and he gave the information freely to law enforcement. Since, as previously discussed, these statements were in the course of detention and investigation, and not custodial interrogation, Miranda warnings were not required.

**4. To Admit Evidence that resulted from searching Defendant's vehicle on January 27, 2009 and February 1, 2009**

Defendant seeks to challenge the admission of evidence seized in searches of his

11
PEOPLE'S TRIAL BRIEF: EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

1   vehicle on January 27, 2008 and February 1, 2008 on 4th amendment grounds. The People

2   believe that this motion should be denied because it is untimely. However, if the Court is

3   willing to hear the 1538.5 motion. then the People believe that the evidence should be admitted

4

5   because both searches were not in violation of the 4th amendment.

6       i.    The Evidence Seized in these Searches should be admitted because any motion to

7            suppress is now untimely

8

9       The San Diego Superior Court Rules, Division III "Criminal" clearly establish a

10  timeline for when PC1538.5 motions should be filed. According to Rule 3.2.3(A), "At the post-

11  bindover arraignment on the information or arraignment on an indictment, the judge will set a

12  filing deadline for all pretrial motions which will be 21 calendar days after the arraignment or

13  other such date as the judge may, for good cause, assign." Rule 3.2.3(B) adds that "All such

14  motions, including motions to join in motions, must be filed no later than the close of business

15  on the assigned date." Penal Code section 1538.5 favors pretrial litigation and resolution of

16  suppression motions. A defendant has a very limited right to bring a suppression motion during

17  trial – only when "opportunity for this motion did not exist or the defendant was not aware of

18  the grounds for the motion . . ." before trial. (Pen. Code, § 1538.5, subd. (h).)

19      In this case the People believe that the evidence seized in the searches should be

20  admitted and not subject to a 1538.5 hearing because a motion to suppress on Fourth

21  Amendment grounds is untimely. The Defendant did have an opportunity to bring this motion

22  as the motion cut-off date was set for March 14, 2008. Defendant never filed a motion.

23  Furthermore, the Defendant was aware of the grounds for the motion as the evidence of the

24  underlying basis for the search is contained in the police reports which were discovered to

25  Defendant well before the motion cut-off date. The People feel that bringing 1538 motions

26  within the time set by the local rules is important for a number of reasons. First, it discourages

27  forum shopping. Second, it allows the People to adequately prepare their case and decision

28  regarding settlement offers. Third. it allows the People to prepare an adequate response to

29  Defense counsel's motion.

ii. The Vehicle Search of January 27. 2008

i. **Factual Background**

On January 27, 2009, Deputy Cruz received a call to investigate a suspicious person at the Albertson's located on Woodland Parkway, San Marcos. When he arrived, Deputy Cruz contacted the Albertson's Loss Prevention Officer (LPO) Rossel Valerio. Valerio told Deputy Cruz that he had seen Defendant conceal alcohol in front of his pants. Deputy Cruz contacted Defendant as he exited Albertsons. Defendant consented to a search of his person. Deputy Cruz asked Moore where his vehicle was parked and Defendant said it was at the apartments across the street. LPO Valerio informed the police that Defendant's vehicle was the gray Acura MDX utility vehicle parked in the parking lot. Defendant adamantly denied that was his vehicle. Deputies conducted a records check and discovered that the Acura was registered to Defendant. Defendant was placed under arrest. Using a key found on Defendant's person, Deputy Cruz conducted a search of the Acura. Inside he found 36 bottles of alcohol, 4 DVDs of "Good Luck Chuck", 5 DVDs of "Saw IV", 5 DVDs of "Game Plan", 4 DVD's of "The Kingdom," and one DVD of "Pirates of the Caribbean." He also found a .45 caliber round in the map pocket, a wallet belonging to Defendant with $1081 inside, and a large knife.

ii. **The Defendant has the Burden of Demonstrating a Legitimate Expectation of Privacy in the Property Seized or the Place Searched.**

Fourth Amendment rights are personal rights which may be asserted only by a defendant who has a legitimate expectation of privacy in the invaded place or the thing searched. (*Rakas v. Illinois* (1978) 439 U.S. 128, 133-134, 143.) Thus, to succeed on a motion to exclude evidence based on a claim of unreasonable search and seizure, the defendant must first establish a personal, reasonable, and legitimate expectation of privacy in the particular area searched or thing seized. (Cal. Const., art. I, § 28, subd. (d); *United States v. Payner* (1980) 447 U.S. 727, 731; *People v. Roybal* (1998) 19 Cal.4th 481, 507; *In re Lance W.* (1985) 37 Cal.3d 873; *People v. Daan* (1984) 161 Cal.App.3d 22.) The defendant bears the burden of showing a legitimate expectation of privacy. (*People v. Roybal, supra; People v. McPeters* (1992) 2 Cal.4th 1148, 1172.) This burden requires the defendant to show two things. First, the defendant must hold an actual (subjective) expectation of personal privacy. Second, this expectation must be one that

13

1   society is prepared to recognize as reasonable. In other words, the defendant's subjective
2   expectation of privacy must be objectively reasonable under the circumstances. (*Smith v.*
3   *Maryland* (1979) 442 U.S. 735, 740.)

4           The courts have specifically rejected several theories advanced to broaden the
5   legitimate expectation of privacy of defendants whose personal rights have not been violated by
6   police conduct. For example, mere presence at the search scene does not establish a defendant's
7   legitimate expectation of privacy. (*Minnesota v. Carter* (1998) 525 U.S. 83; *Rakas v. Illinois*,
8   *supra*, 439 U.S. at pp. 140-142.) Nor does the defendant gain an expectation of privacy simply
9   because he or she is charged with possession of the property sought to be suppressed. (*United*
10  *States v. Salvucci* (1980) 448 U.S. 83, 85; *People v. Nelson* (1985) 166 Cal.App.3d 1209; see
11  also, *People v. Ooley* (1985) 169 Cal.App.3d 197; *People v. Root* (1985) 172 Cal.App.3d 774.)
12  Even the defendant's ownership of the property itself is insufficient to create a legitimate
13  expectation of privacy. (*United States v. Salvucci, supra; People v. McPeters* (1992) 2 Cal.4th
14  1148, 1172.)

15          **iii. Defendant's earlier disclaimer of possession surrenders privacy**

16          It is well-established that Fourth Amendment rights are personal and may not be
17  asserted vicariously. (*Alderman v. United States* (1969) 394 U.S. 165, 174.) A defendant's
18  disclaimer of possessory interest in an area searched defeats any assertion of a legitimate
19  expectation of privacy. Thus, any such disclaimer, whether at the time of the search or at the
20  later suppression hearing, bars defendant from moving to suppress the fruits of such search.

21          The appellate court in *People v. Stanislawski* (1986) 180 Cal.App.3d 748, held the
22  defendant's disclaimer to officers of possessory interest in the property searched barred his
23  insistence upon an expectation of privacy. "It is settled law that a disclaimer of proprietary or
24  possessory interest in the area searched or the evidence discovered terminates the legitimate
25  expectation of privacy over such area or items." (*Id.* at p. 757.) Similarly, in *People v. Dasilva*
26  (1989) 207 Cal.App.3d 43, the appellate court held: "We will not extend California law to
27  permit a defendant who disclaims possession of an object to take a contrary position in an effort
28  to attain standing to seek to exclude that object from evidence." (*Id.* at p. 49; similarly see
29  *People v. Mendoza* (1986) 176 Cal.App.3d 1127, 1133 [denial of ownership "virtually the

14
PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

1    equivalent of an implied consent to search"]; distinguish *People v. Dachino* (2003) 111
2    Cal.App.4th 1429 [disclaimer of ownership of item found did not deprive defendant of
3    expectation of privacy in place searched]; contra *People v. Allen* (1993) 17 Cal.App.4th 1214,
4    1222-1223 [error to rely on the disclaimer by defendant to the exclusion of all other evidence in
5    determining if defendant had a reasonable expectation of privacy].)

6          In this case Defendant claimed that his vehicle was parked across the street and
7    denied that the Acura searched was his. In giving up his possessory interest in the vehicle,
8    Defendant waived his ability to assert an expectation of privacy in the search of the Acura.
9    Therefore, evidence of the items found as a fruit of the search should be admitted into evidence.

10         **iv. The Search of Defendant's vehicle was Proper Because the Contraband was in**
11         **Plain View**

12         "It has long been settled that objects falling in the plain view of an officer who has
13   a right to be in the position to have that view are subject to [search and] seizure and may be
14   introduced in evidence." (*Harris v. United States* (1968) 390 U.S. 234, 236; *People v. Camacho*
15   (2000) 23 Cal.4th 824, 831-838; *North v. Superior Court* (1972) 8 Cal.3d 301, 306.) " 'A search
16   implies a prying into hidden places for something that has been intentionally put out of the way.'
17   . . . 'Things that are openly visible do not require a search for their discovery.' . . . The Fourth
18   Amendment does not prohibit the seizure of evidence 'which is readily visible' and 'accessible'
19   to the police." (*People v. Superior Court (Aslan)* (1969) 2 Cal.App.3d 131, 135, citations
20   omitted.)

21         The right of officers to seize items in plain view extends to objects that officers
22   reasonably believe will aid in the defendant's apprehension or conviction – as well as to
23   contraband and stolen property. (*Guidi v. Superior Court* (1973) 10 Cal.3d 1, 11-14; *People v.*
24   *Hill* (1974) 12 Cal.3d 731, 755-756.) All that is required is that the incriminating character of
25   the item be immediately apparent to the officer. (*People v. Lenart* (2004) 32 Cal.4th 1107,
26   1119.)

27         An example of a plain view seizure is found in *People v. LeBlanc* (1997) 60
28   Cal.App.4th 157. Officers with an arrest warrant were handcuffing the defendant in the
29   threshold to a motel room while standing in the doorway. They saw two cocaine pipes in plain

15

1   view inside the room. The court held the officers were entitled to intrude further into the room

2   to seize the two pipes. (*Id.* at pp. 163-166.) But they were not entitled to search the remainder

3   of the room on probable cause alone unless exigent circumstances existed. (*Id.* at pp. 166-167.)

4   An item in plain view does not need to be "inadvertently" discovered before it

5   may be seized. (*Horton v. California* (1990) 496 U.S. 128, 130; *North v. Superior Court, supra,*

6   8 Cal.3d at pp. 307-308.) Indeed, even without a search warrant a plain-view seizure is not

7   presumptively invalid. (*Guidi v. Superior Court, supra,* 10 Cal.3d at p. 15.)

8   When officers have the right to seize items in plain view, they also have the right

9   to inspect and photograph those items subject to seizure. (*People v. Roberts* (1956) 47 Cal.2d

10   374, 380; *People v. Williams* (1988) 198 Cal.App.3d 873, 888-892; *People v. Superior Court*

11   *(Aslan), supra,* 2 Cal.App.3d at p. 134.) Officers do not lose the right to seize evidence in plain

12   view merely because they wait for two or three hours to take physical possession of it, or

13   because they temporarily leave the location at which they made their observation. (*People v.*

14   *Hamilton* (1980) 105 Cal.App.3d 113, 118; *People v. Superior Court (Quinn)* (1978) 83

15   Cal.App.3d 609, 617; *People v. Superior Court (Irwin)* (1973) 33 Cal.App.3d 475, 480.)

16   In this case, Deputy Cruz's search of Defendant's vehicle without a warrant was

17   also valid because contraband was in plain view. A large bottle of alcohol was located on the

18   front right passenger floor which could be clearly seen by looking into the vehicle's window.

19   Additionally, multiple bottles of alcohol were also visibly located on the floor behind the

20   driver's seat. Also a knife handle could be seen sticking up between the driver's seat and the

21   front center console.

22   **v. The Warrantless Search of Defendant's Vehicle was Proper because it was**

23   **Supported by Probable Cause**

24   "Hornbook law states that the Fourth Amendment to the United States

25   Constitution permits the warrantless search of an automobile with probable cause. [Citations.]"

26   (*People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059.) When police officers have probable

27   cause to believe an automobile contains contraband or evidence of a crime, or is itself an

28   instrumentality of a crime, they may search the vehicle for such contraband or evidence without

29   a search warrant. (*United States v. Ross* (1982) 456 U.S. 798; *People v. Chavers* (1983) 33

1 | Cal.3d 462. 468-469.)

2         [T]he scope of the warrantless search authorized by [the so-called
3       "automobile exception"] is no broader and no narrower than a magistrate could
legitimately authorize by warrant. If probable cause justifies the search of a
4       lawfully stopped vehicle, it justifies the search of every part of the vehicle and its
.5       contents that may conceal the object of the search.

6 | (*United States v. Ross, supra,* 456 U.S. at p. 825.)

7         The Court has defined probable cause to search as "a fair probability that
8 | contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983)
9 | 462 U.S. 213, 238.)

10         •  Under *Ross,* a warrantless vehicle search based on probable cause extends to
11 | closed containers, as well as the personal belongings of any passengers within the vehicle. The
12 | only limitation is that the scope of the search be reasonably related to the object sought. (*United*
13 | *States v. Ross, supra,* 456 U.S. at p. 824; *Wyoming v. Houghton* (1999) 526 U.S. 295.) And no
14 | warrant is required even if the probable cause relates solely to a container within the vehicle,
15 | contrary to earlier cases. (*California v. Acevedo* (1991) 500 U.S. 565.) A probable cause search
16 | also covers the vehicle's trunk. (*People v. Hunter* (2005) 133 Cal.App.4th 371, 381-382; *People*
17 | *v. Hunt* (1990) 225 Cal.App.3d 498, 509.)

18         Because of the reduced expectation of privacy in vehicles and their ready mobility,
19 | no further showing of exigent circumstances is required before conducting a probable cause
20 | search. (*Maryland v. Dyson* (1999) 527 U.S. 465; *Pennsylvania v. Labron* (1996) 518 U.S. 938;
21 | *California v. Carney* (1985) 471 U.S. 386; *Michigan v. Thomas* (1982) 458 U.S. 259, 261.)

22         In this case Deputy Cruz had probable cause to believe that Defendant's vehicle
23 | contained contraband. Upon arriving at the scene Deputy Cruz was told that Defendant was a
24 | frequent shoplifter in Albertson's. Once Defendant was detained, he admitted that he put
25 | alcohol in the front of his pants but then thought people were following him so he took it out.
26 | Deputy Cruz asked which vehicle was his. Defendant denied that the silver Acura in the parking
27 | lot was his vehicle. At that point, the Loss Prevention Officer Rosell Valerio showed Deputy
28 | Cruz surveillance video showing Defendant going in Albertson's, to the alcohol aisle, back out
29 | to his vehicle, then back in Albertson's again. Defendant's admission, Valerio's statements, and

17

the surveillance video provided Deputy Cruz with reason to believe there was a fair probability that contraband or evidence of a crime would be found in Defendant's vehicle. Thus he had probable cause to search Defendant's vehicle.

iii. The Vehicle Search of February 1, 2008

**i. Factual Background**

On February 1, 2009, Defendant entered Albertsons located 1929 West San Marcos Blvd. Manager Troy Ludwig called police when he saw Defendant in the store. Deputy Robins contacted Defendant just as he was leaving the store but had not yet stepped outside. Deputy Robins chased Defendant through the store as Defendant discarded bottles of alcohol. Defendant was detained and Deputy Robins spoke with Troy Ludwig. Ludwig explained that Albertson's Corporate Los Prevention Department had sent a flyer about Defendant. The flyer explained that Defendant enters Albertsons stores and steals bottles of high-end liquor. Defendant conceals the bottles in his pants and take the alcohol to his silver Acura MDX with license plate BLKPNTHR. Defendant places the stolen bottles of alcohol in his car and then reenters the store and steals again. After gathering that information, Deputy Robbins placed Defendant under arrest. Using keys found on Defendant's person, Deputy Robins entered Defendant's vehicle located in the parking lot. Inside Deputy Robbins found two bottles of alcohol inside a plastic container in the trunk. He also found a blue and black mask and gloves in the rear passenger compartment.

**ii. The Search was Proper because Deputy Robins had Probable Cause to Believe that Contraband would be found in Defendant's vehicle.**

As stated above when police officers have probable cause to believe an automobile contains contraband or evidence of a crime, or is itself an instrumentality of a crime, they may search the vehicle for such contraband or evidence without a search warrant. (*United States v. Ross* (1982) 456 U.S. 798; *People v. Chavers* (1983) 33 Cal.3d 462, 468-469.)

In this case Deputy Robins had probable cause to believe that Defendant's vehicle contained contraband. Through information received from Manager Ludwig, Deputy Robins was aware that Defendant has been entering Albertsons stealing bottles of high end liquor by concealing them in his pants and then placing them in his vehicle and then reentering the store

1  and repeating the process. Deputy Robins had chased Defendant through the store and observed
2  him remove bottles of high end liquor from his pants. Based on the background information
3  provided by Troy Ludwig as well as the fact that Deputy Robins observed Defendant with
4  alcohol in his pants he had reason to believe there was a fair probability that contraband or
5  evidence of the petty theft/burglary would be found in Defendant's vehicle.

6

7  **5. To Admit Evidence of Defendant's Uncharged Acts of Entering and Stealing From**
8  **Albertson's Stores.**

9      Any relevant fact in dispute, other than conduct, can be proved by uncharged acts,
10  and even conduct can be proved so long as no inference as to character is required. (*People v.*
11  *Thompson* (1979) 98 Cal.App.3d 467.) Evidence Code section 1101(b) allows the admission of
12  evidence of uncharged misconduct when relevant to prove something other than character or
13  disposition. Evidence Code section 1101(b) states:

14      Nothing in this section prohibits the admission of evidence that a person
       committed a crime, civil wrong, or other act when relevant to prove some fact
15      (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or
16      absence of mistake or accident or whether a defendant in a prosecution for an
       unlawful sexual act or attempted unlawful act did not reasonably and in good faith
17      believe that the victim consented) other than his disposition to commit such act.

18

19      The factors a court must consider in determining the admissibility of such
20  evidence are threefold:   "As with other types of circumstantial evidence, its admissibility
21  depends upon three principal factors: (1) the *materiality* of the fact sought to be proved or
22  disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and
23  (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*People v.*
24  *Thompson* (1980) 27 Cal.3d 303, 315.)

25      **i.  Materiality of Facts Sought to be proved**

26      "In order to satisfy the requirement of *materiality*, the fact sought to be proved
27  may be either an ultimate fact in the proceeding or an intermediate fact 'from which such
28  ultimate fact may be presumed or inferred.' " (*People v. Thompson, supra,* at 315.) An element
29  of the offense is an ultimate fact. (*Id.*) Intent is also an ultimate fact. (*People v. Nible* (1988)

1    200 Cal.App.3d 838, 846 [evidence of prior burglary and a sexual assault admitted to prove
2    defendant's intent when he entered a woman's home in current case].) Knowledge, common
3    plan or scheme and motive are intermediate facts, from which the ultimate fact can be inferred.

4                In the instant case, the fact sought to be proved by Defendant's acts are the intent,
5    motive, and common scheme or plan. These facts are material. Intent is a material fact because
6    it is an essential element of the charge. To be guilty of burglary, Defendant must have had the
7    intent to steal when he entered each Albertson's store. (*See* California Penal Code section 459.)
8    Defendant's motive (financial gain) is material because it is an intermediate fact that tends to
9    prove an ultimate fact. It tends to prove that he entered the Albertson's with intent to steal. The
10   fact that Defendant had a common scheme or plan is also an intermediate fact that infers an
11   ultimate fact. If Defendant had a scheme to steal from Albertson's on a regular basis (which the
12   prosecution believes he did) then that tends to show that Defendant had the intent to steal on
13   each particular occasion in which he is charged. Thus, the three facts the prosecution intends to
14   show by introducing Defendant's other acts of stealing are material to the crimes charged.

15   **ii. Relevance of uncharged acts**

16               Relevance requires that the act must have a tendency to prove or disprove the
17   material fact. (*People v. Thompson, supra*, at 315.) This means that the uncharged conduct
18   must tend to prove either an ultimate fact, such as an element of the offense or identity, or the
19   tendency to prove an intermediate fact, such as motive, common plan or scheme, knowledge, or
20   absence of mistake and accident, which will tend to prove the ultimate fact of a required ele-
21   ment.

22               Courts look for a direct relationship between the uncharged wrongful act and the
23   component of the crime sought to be proved. (*People v. Haston* (1968) 69 Cal.2d 233, 244-
24   245.) Evidence Code section 210 states:

25           Relevant evidence means evidence, . . . , having any tendency in reason to prove
             or disprove any disputed fact that is of consequence to the determination of the
26           action.
27

28               Defendant's past acts of stealing are relevant to prove that Defendant had the
29   requisite intent for burglary. That is, they prove that Defendant entered Albertson's and Stater

                                                 20

1  Bros. on each of the occasions charged (January 27, January 31, February 1, and September 25)
2  with the intent to commit larceny. (See Penal Code section 459.) The prior acts prove the
3  requisite intent both directly and indirectly.

4  **1. Defendant's prior acts caught on video prove his intent directly.**

5  The introduction of other-crimes evidence frequently is relevant to prove intent
6  because of the assumption that people act with a similar intent in similar circumstances. The
7  California Supreme Court explained in *People v. Robbins* (1988) 45 Cal.3d 867, at page 879:

8    We have long recognized "that if a person acts similarly in similar situations, he
9    probably harbors the same intent in each instance" [citations], and that such prior
     conduct may be relevant circumstantial evidence of the actor's most recent intent.
10   The inference to be drawn is not that the actor is *disposed* to commit such acts;
     instead, the inference to be drawn is that, in light of the first event, the actor, at the
11   time of the second event, must have had the intent attributed to him by the
12   prosecution.

13

14  Furthermore, no requirement exists that for purposes of establishing defendant's
15  intent or motive both the charged and uncharged acts be identical or nearly identical. (*People v.*
16  *Thompson, supra,* 27 Cal.3d at 319; *People v. Harvey* (1984) 163 Cal.App.3d 90, 104-105.)
17  Rather, only substantial similarity is necessary to provide the required "link" in the inference-
18  drawing process. (*People v. Thompson, supra,* at 319-320, fn. 23; *People v. Nible, supra,* 848-
19  850.)

20  In the instant case, Defendant's prior crimes of stealing from Albertson's are
21  extremely probative of his intent with regard to the charged crimes. Defendant has been
22  documented on Albertson's CCTV numerous times entering their stores and concealing liquor.
23  During those prior acts, Defendant was wearing almost the exact same clothing (football jersey
24  and baggy jeans), entering the store at almost the same time (around 10:30 p.m. – 11 p.m. at
25  night when the store is not as busy), behaving similarly (waiting in the liquor aisle until no one
26  is around and then concealing the alcohol in his pants as well as entering and exiting the store
27  numerous times to transport the liquor), and stealing the same product (high-end bottles of
28  alcohol). A jury could easily infer, and the prosecution will ask the jury to infer, that Defendant
29  had the same intent during the charged acts that he did in the prior acts caught on video tape. A
    reasonable jury could easily come to that conclusion.

## 2. Defendant's prior acts caught on video prove his intent indirectly by establishing motive.

Evidence of a defendant's commission of an uncharged criminal act or acts is admissible to establish motive. (*People v. Thompson, supra*, at 315, fns. 13, 14.) Motive is always subject to proof and material, and wide latitude is permitted in admitting evidence of its existence. (*People v. Pertsoni* (1985) 172 Cal.App.3d 369, 375; *People v. Daniels* (1971) 16 Cal.App.3d 36, 46.)

The video evidence of Defendant's prior acts of steeling uncovers the extent to which Defendant financially benefited from his actions, i.e. his motive. The video evidence shows that Defendant was involved in stealing liquor for financial gain. They show a regular pattern of Defendant steeling mass quantities of liquor on a regular basis. A jury could conclude that he had a similar motive on January 27, January 31, February 1, and September 25. This motive tends to show the requisite intent for burglary and thus, is relevant.

## 3. Defendant's prior acts caught on video prove his intent indirectly by establishing his common scheme or plan.

The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done. (*People v. Ewoldt* (1994) 7 Cal. 4th 380, 393, citing 1A Wigmore, Evidence (Tillers Rev. ed. 1988 102. p. 1666).) The existence of such a design or plan may be proved circumstantially by evidence that the defendant has performed acts having "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." (*Id.* at 293.) Evidence of common design or plan, therefore, is not used to prove identity or intent but rather to prove that defendant engaged in the conduct alleged to constitute the charged offense. (*Id.*)

To be relevant, the plan, as established by the similarities between the charged and uncharged offenses *need not be distinctive or unusual*. Evidence that the defendant possessed a plan to commit the type of crime with which he or she is charged is relevant to prove the defendant employed that plan and committed the charged offense. (*People v. Balcom* (1994) 7 Cal. 4th 414, 424.) Evidence that the defendant committed uncharged criminal acts that are

1   similar to the charged offense may be relevant if these acts demonstrate circumstantially that the
2   defendant committed the charged offense pursuant to the same design or plan he or she used in
3   committing the uncharged acts. *Id.* Unlike evidence of uncharged acts used to prove identity.
4   the plan need not be unusual or distinctive; it need only exist to support the inference that the
5   defendant employed that plan in committing the charge offense. *Id.*, citing *Ewoldt* at 403.

6          Several cases have discussed the admission of prior uncharged acts in order to
7   prove a common plan. (*People v. Balcom*, 7 Cal.4th 414 [similar rape by defendant to prove a
8   charged rape]; *People v. Ing* (1967) 65 Cal.2d 603 [doctor administered injections to women
9   patients then raped them was admitted to prove similar rape]; *People v. Archerd*, 3 Cal.3d 615
10  [defendant murdered all his wives by insulin injections]; *People v. Lisenba* (1939) 14 Cal.2d
11  403 [prior murder of defendant's wife, also by snakebite, for purpose of insurance indemnity];
12  *People v. Thomas* (1978) 20 Cal.3d 457 [prior molest of victim's sister met criteria for
13  admissibility but excluded because of remoteness]. In Thomas, the Court stated that evidence of
14  prior misconduct committed to a person other than the victim of the charged offense is
15  admissible to show a common plan "where the prior offenses (1) are not too remote in time, (2)
16  are similar to the offenses charged, and (3) are committed upon persons similar to the
17  prosecuting witness." (*Id.*)

18         The video evidence establishes the requisite intent for burglary indirectly by
19  showing Defendant acted with a common scheme or plan. The video evidence establishes that
20  Defendant follows a clear plan or scheme regarding his thefts. Defendant enters Albertson's at
21  night when there are fewer employees on duty than usual. He always enters between 10.00 p.m.
22  and midnight. He always wears baggy jeans and a Carolina Panther's jersey. Presumably, the
23  baggy attire is to better hide the product in which he is stealing. Once in the store he proceeds
24  directly to the liquor aisle where he hides expensive bottles of liquor in his clothing. He places
25  the liquor in his pants using the belt line to hold them in place and uses the football jersey to
26  hide the liquor from store employees and other customers. He exits the store with the liquor,
27  deposits it in his Acura, and re-enters the store and repeats the process. During the commission
28  of these thefts he makes small talk with the Albertson's employees. They know him because of
29  the frequency in which he appears there.

1   The charged acts are entirely consistent with Defendant's scheme. Three of the
2   arrests take place at Albertson's (where Defendant usually steals), and one arrest at Stater Bros,
3   both of them being grocery stores. During all three arrests that lead to the charged acts,
4   Defendant was wearing baggy jeans and a Carolina Panthers jersey and entered Albertson's
5   between 10:00 p.m. and midnight. Defendant was following his regular scheme when arrested
6   for the acts charged. Thus, the scheme tends to show Defendant had the requisite intent for
7   burglary when he was arrested on January 27, January 31, and February 1.

8                    **4. Defendant's prior acts caught on video prove his intent**
9                         **indirectly by establishing his modus operandi.**

10      Defendant had a clear mode of operation while committing the charged acts and
11  the prior acts caught on video surveillance. Defendant followed a clear pattern, from the time of
12  day to the clothes he wore when he was committing the acts. This mode of operation also
13  indirectly shows that Defendant possessed the requisite intent for burglary on January 27,
14  January 31, and February 1.

15                           **iii. Policies for exclusion**

16      Once the court has determined that evidence of an uncharged act tends to prove a
17  material fact that is in dispute, the question whether any extrinsic policy requires exclusion must
18  be addressed. (*People v. Thompson, supra,* 27 Cal.3d at 315.) While often referred to as the
19  "Evidence Code section 352" criteria governing admission, the analysis encompasses more than
20  is defined in section 352. The requirement that the uncharged conduct not contravene any
21  policy barring admission takes into account three policies: (1) policies barring evidence which
22  proves guilt by disposition, (2) policies barring use of prejudicial cumulative evidence, and (3)
23  the statutory policy, Evidence Code section 352. (*People v. Bigelow* (1984) 37 Cal.3d 731, 747.)

24      First, in considering whether the uncharged conduct proves guilt by disposition,
25  the court is required to compare the importance of the evidence to the prosecution's case with
26  the danger of prejudice. (*People v. Evers* (1992) 10 Cal.App.4th 588, 599.) Next, if the offered
27  evidence is merely cumulative with respect to other evidence which the prosecution could use to
28  prove the same point, it should be excluded. (*People v. Thompson, supra,* at p. 318.) Referred
29  to as the "rule of necessity," evidence that is merely cumulative is inadmissible to prevent

24
PEOPLE'S TRIAL BRIEF. EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

prosecutorial overkill. (See *People v. Nible, supra.* 200 Cal.App.3d at 850.) Lastly, Evidence Code section 352. states:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

The probative value of the uncharged acts has to be evaluated individually in each case. Two principles bear noting. The term "prejudicial" should be defined and it must be emphasized that the probative value must be substantially outweighed by prejudice.

All relevant evidence which points to guilt is prejudicial to the defendant. The fact that evidence of uncharged misconduct may prejudice the defendant in the minds of the jurors is no ground for exclusion. (*People v. Peete* (1946) 28 C.2d 306, 315.) The "prejudice" referred to in Evidence Code § 352 applies to evidence which uniquely tends to evoke an emotional bias against a defendant and has little effect on the issues. "Prejudicial is not synonymous with damaging." (*People v. Brogna* (1988) 202 Cal.App.3d 700, 709-710, quoting *People v. Yu* (1983) 143 Cal.App.3d 358, 377.)

The principal factor affecting the probative value of the uncharged conduct is the tendency of such acts to demonstrate the theory under which they are offered. (*People v. Ewoldt, supra.* 7 Cal.4th at p. 404.) In that case, the Court concluded there was a strong tendency for the uncharged sexual molestations of the victim's sister to demonstrate a common plan to molest. (*Id.*) When the source of the uncharged acts is independent of the evidence of the charged offense, the probative value of that uncharged conduct is increased. (*Id.*) For example, if a witness to the uncharged conduct provided a detailed report without being aware of the charged offense. little risk exists that the witness was improperly influenced by the current charges. This fact enhances the probative value of the uncharged conduct. (*Id.*) Probative value is additionally increased if independent evidence exists of additional instances of similar misconduct. (*Id.* at p. 405.) Further, the potential for prejudice decreases when testimony about the uncharged acts is "no stronger and no more inflammatory than the testimony concerning the charged offense." (*People v. Ewoldt, supra.* at p. 405.)

The question whether any extrinsic policy requires exclusion must be considered

PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST. MOTIONS IN LIMINE

1   by keeping in mind the statutes permitting introduction of uncharged act evidence. Those
2   statutes are clear, that the evidence "is admissible." Assuming the criteria are met. (See, Evidence
3   Code section 1101(b).) Most significantly, once the court finds that the uncharged acts are both
4   material and relevant, Evidence Code section 351 mandates that "all relevant evidence is
5   admissible."

6          The evidence sought to be admitted (Defendant's prior acts of stealing
7   documented on surveillance video) is no more prejudicial than the crimes charged. In fact, the
8   crimes charged are identical to the acts captured by surveillance. On the other hand, the video
9   surveillance is extremely probative to the facts sought to be proved. The prior uncharged acts
10  directly show Defendant's intent and establish Defendant's motive, common scheme or plan,
11  and modus operandi. Thus, the probative value of the surveillance is not outweighed by its
12  prejudice.

13  **6. To include reference to defendant's convictions or misdemeanor conduct involving crimes**
14  **of moral turpitude to impeach his credibility should he elect to testify at trial.**

15         In a criminal case where the defendant testifies on his own behalf, his prior convictions for
16  crimes of moral turpitude may be used for impeachment as they illustrate a defendant's "readiness to do
17  evil." (*People* v. *Wheeler* (1992) 4 Cal. 4th 284.) Additionally, any prior misdemeanor conduct
18  involving moral turpitude is admissible to impeach. *See id.* Defendant was convicted of Carring a
19  Concealed Firearm, a crime of moral turpitude, on January 28, 2002. Additionally, Defendant was
20  convicted of misdemeanor Petty theft with a Prior on March 16, 2009, misdemeanor petty theft with a
21  prior on August 13, 1998, and misdemeanor petty theft on August 5, 1997. Thus, if Defendant testifies
22  on his own behalf, the People request permission to impeach defendant with his felony conviction and
23  misdemeanor conduct.

24

25  **7. To *include* proof of Defendant's prior misdemeanor convictions as delineated above**
26  **during the priors proof phase of the trial.**

27         Pursuant to Evidence Code section 1280, these records are admissible as public records with proper
28  certification that the document was prepared by a public employee in the course of employment. No
29  custodian is needed. (People v. Duran (2002) 97 Cal.App.4th 1448). Additionally, evidence Code

Section 1530-31 allows authentication of these public records through testimony by a public employee that the copy is a correct copy of the original. Additionally, Evidence Code section 452(b) makes a certified copy of an official record of conviction "admissible ... to prove the commission ... of an offense, prior conviction, service of a prison term, or other act, condition or event recorded by the record." (See People v. Duran (2002) 97 Cal.App.4th 1448.)

## 8. Bifurcation of Priors, Admission of Priors, Waiver of Jury Trial on Priors.

The People request that the Court inquire as to whether Defendant intends to admit his prior convictions as delineated above if guilt is established or whether he intends to seek a bifurcated trial. If the latter is his option, so that the jury may be properly informed as to the proposed length of their service and to be properly approached in *voir dire*, the People request that the Court inquire if the decision has been made whether he wishes a jury to decide if his conviction in fact occurred.

Dated: 6/9/09

Respectfully submitted,

BONNIE M. DUMANIS
District Attorney

By: Chandelle Konstanzer
CHANDELLE KONSTANZER
Deputy District Attorney
Attorney for Plaintiff

1  BONNIE M. DUMANIS
   District Attorney
2  CHANDELLE KONSTANZER, SBN 253224
   Deputy District Attorney
3  325 South Melrose, Suite 5000
   Vista, CA 92081-6691
4  Tel. (760) 806-4059
   Attorney for Plaintiff
5

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8        FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION

9  THE PEOPLE OF THE STATE OF CALIFORNIA,   | Case No:  CN241210

10                              Plaintiff,

11                  v.                        **PEOPLE'S TRIAL BRIEF;**
                                              **WITNESS LIST; EXHIBIT LIST;**
12                                            **MOTIONS IN LIMINE**

13  JEFFREY SHERROD MOORE,                   Date: 6/9/09
                                             Time: 8:45 a.m.
14                              Defendant    Dept:  5

15

16        Comes now the Plaintiff, the People of the State of California, by and through

17  their attorneys, BONNIE DUMANIS, District Attorney, and CHANDELLE KONSTANZER,

18  Deputy District Attorney, and respectfully submits the following:  People's Trial Brief, Witness

19  List, Exhibit List, and Motions in Limine.

20

21

22                                     **I**
                                  **SYNOPSIS**

23  **A. CHARGES**

24        **a.** Count One: Penal Code § 459 – Burglary (Date of Offense, January 27, 2008)

25        **b.** Count Two: Penal Code § 484 with a Penal Code §666 allegation – Petty Theft,

26            with a Prior (Date of Offense. January 27, 2008)

27        **c.** Count Three: Penal Code § 459 with a Penal Code § 12022.1(b) allegation –

28            Burglary while released on Bail (Date of Offense, January 31, 2008)

29        **d.** Count Four: Penal Code § 484 with a Penal Code §666 allegation – Petty Theft,

                                        1

1    with a Prior (Date of Offense, January 31, 2008)

2    e. Count Five: Penal Code 459 with a Penal Code 12022.1(b) allegation – Burglary
3       while released on Bail (Date of Offense, February 1, 2008)

4    f. Count Six: Penal Code § 484 with a Penal Code § 666 allegation – Petty Theft
5       with a Prior (Date of Offense, February 1, 2008)

6    g. Count Seven: Penal Code 459 with a Penal Code 12022.1(b) allegation – Burglary
7       while released on Bail (Date of Offense, September 25, 2008)

8    h. Count Eight: Penal Code § 484 with a Penal Code § 666 allegation – Petty Theft
9       with a Prior (Date of Offense, September 25, 2008)

10   **B. LOCATIONS OF OFFENSES**

11   a. Counts One and Two were committed at Albertson's located at 151 Woodland
12      Parkway, San Marcos, California, on January 27, 2008.

13   b. Counts Three and Four were committed at Albertson's located at 1570 West
14      Valley Parkway, Escondido, California, on January 31, 2008.

15   c. Counts Five and Six were committed at Albertsons located at 1929 West San
16      Marcos Blvd, San Marcos, California, on February 1, 2008.

17   d. Counts Seven and Eight were committed at Stater Bros. located at 3770 Mission
18      Avenue, Oceanside, California, on September 25, 2008.

19

20                                **II**
                        **PROCEDURAL HISTORY**
21

22   Case No. CN241210 (Commercial Burglaries Jan 27, Jan 31, Feb 1, 2008)

23        On February 8, 2008, the District Attorney's Office filed a complaint against

24   Defendant alleging violations of Penal Code sections 459, 484/666 for an incident that occurred

25   on January 27, 2008, and Penal Code sections 459, 484/666 and PC12022.1(b) for two separate

26   incidents that occurred on January 31, 2008, and February 1, 2008. Defendant was arraigned

27   and the case was set for readiness on February 22, 2008.

28        On February 26, 2008, in lieu of a preliminary hearing, both parties stipulated to a

29   bind over. Defendant was immediately arraigned on the information. The case was set for jury

1   trial on April 16. 2008. That jury trial date was continued several times and is now set for June
2   9, 2009.

3   Case No. CN251586 (Commercial Burglary of September 28, 2008

4           On October 3, 2008. the District Attorney's Office filed a complaint against
5   Defendant alleging violations of Penal Code sections 459, 484/666, and PC12022.1(b)
6   stemming from an incident which occurred while case CN241210 was pending. On November
7   3, 2008, once again the parties stipulated to a bindover. Defendant waived time on this case and
8   set the case to trail case CN241210.

9   Penal Codes 666 allegation

10          Additionally, Defendant suffered three prior convictions that are the basis for the
11  Penal Code § 666 allegation attached to Counts 2, 4, 6 and 8. The following outline those prior
12  convictions, and a certified copies of each will be provided at trial.

13          On March 16, 1999, Defendant pled guilty to Penal Code § 666-484, Petty theft
14  with a Prior, in case number CN094004.

15          On August 13, 1998, Defendant pled guilty to Penal Code § 666-484 17(b)(4),
16  Petty Theft with a Prior, in case number M761481.

17          On August 5, 1997, Defendant pled guilty to Penal Code § 484-490.5, Petty Theft,
18  in case number CN062037.

19

20                                    III
21                          STATEMENT OF FACTS
    **Charged Offenses**

22          Defendant was suspected of stealing liquor and various other products from
23  Albertson's locations in North County San Diego. These suspicions were substantiated on
24  January 27, 2008 when Defendant was arrested for shoplifting liquor at the Albertson's located
25  at 151 Woodland Pkwy, San Marcos. (CN241210 counts 1 and 2). Wearing baggy pants and an
26  oversize Carolina Panther's jersey, Defendant entered Albertson's and was observed by store
27  personnel concealing bottles of alcohol in his pants. Sheriff's Deputies arrived and contacted
28  Defendant who admitted that he had put alcohol in his pants and started to walk out of the store.
29  Before leaving the store Defendant believed someone was watching him so he removed the

                                      3

1    bottles. A search of Defendant's vehicle yielded 36 bottles of alcohol.

2                    Three days later, and after having been released on bail, Defendant was arrested
3    again for shoplifting liquor at the Albertson's located at 1570 West Valley Parkway, Escondido.
4    (CN241210 counts 3 and 4). As before, Defendant entered wearing baggy jeans and an oversize
5    Carolina Panthers jersey and concealed bottles of alcohol in his pants. When Officers contacted
6    Defendant, he consented to being searched and Officers removed four bottles of alcohol from
7    Defendant's waistband.

8                    —    On February 1, 2008, the very next day and again after been released on bail,
9    Defendant was arrested for shoplifting liquor a third time at the Albertson's located at 1929
10   West San Marcos Blvd. (CN241210 counts 5 and 6). Like before, Defendant entered
11   Albertson's wearing baggy jeans and the oversize jersey. He concealed alcohol in his clothes.
12   When the police arrived they saw Defendant as he exited the store. Defendant ran back inside to
13   the back of store discarding bottles of alcohol as he ran.

14                   On September 25, 2008, while pending trial on CN241210, Defendant entered
15   Stater Bros. Grocery Store located at 3770 Mission Avenue, Oceanside. (CN251586). Once
16   again, Defendant, wearing baggy pants and a jersey, concealed bottles of alcohol in his clothing.
17   Once outside, Defendant was contacted by police. He was placed under arrest and four bottles
18   of alcohol were found concealed in his pants.

19   **Uncharged Offenses.**

20                   After Defendant's arrest on January 27, 2008, Albertson's Organized Retail
21   Crimes Specialists conducted an investigation into Defendant's activities at Albertson's grocery
22   stores. They interviewed store associates at the stores defendant regularly visited and reviewed
23   Albertson's CCTV for a time period spanning 90 days prior to Defendant's arrest.

24                   CCTV from Alberton's located on Marron Road, revealed Defendant was stealing
25   on several dates, all of which occurred on a Monday just after 10:00 p.m. In each instance,
26   Defendant follows roughly the same course of action. While wearing a Carolina Panthers
27   Jersey, Defendant is observed in the liquor aisle where he selects liquor off the shelf and refaces
28   the liquor so it appears no liquor has been taken. In each instance, he is next observed walking
29   behind the same center display and concealing the liquor in his jeans. It appeared that he used

                                                   4

1    the waistline of the jeans to hold the liquor against his body. He stocked his pants with four or
2    five bottles - one or two bottles at a time. At the same time he is observed furtively glancing
3    around the liquor aisle. After his pants are stocked with four of five bottles of liquor, Defendant
4    exited camera view. On each date, Defendant entered and exited the liquor area of the store
5    from 2 to 10 times.

6         1. December 10, 2007 at approximately 10:20 p.m.

7         2. December 17, 2007 at approximately 10:30 p.m.

8         3. December 30, 2007 at approximately 10:00 p.m.

9         4. January 7, 2008 at approximately 10:20 p.m.

10        5. January 14, 2008 at approximately 10:20 p.m.

11              At the Alberton's located on West Valley Parkway, Escondido, Defendant is
12    observed on CCTV on 9 separate dates. Defendant's acts are roughly the same in this store as in
13    the others. Again, Defendant always wore baggy jeans and a Carolina Panthers Jersey. CCTV
14    captures him in the liquor aisle with a grey hand basket. He selected liquor off the shelf;
15    however, he is not seen concealing the liquor on CCTV. He is observed entering and exiting the
16    liquor department to select more liquor between one and eight times per visit.

17              Additionally, Defendant was spotted concealing liquor and exiting the store on
18    January 29, 2008 by loss prevention officer Rossell Valerio. Valerio called the police as soon as
19    he observed Defendant's crime, but San Diego Sheriffs arrived too late and could not apprehend
20    Defendant. According to Valerio, Defendant selected several bottles of liquor and exited the
21    store without paying. Defendant was again wearing a Carolina Panthers Jersey. Footage from
22    CCTV shows that Defendant was in the liquor aisle again on that date.

23

24                                    IV

25                                  TRIAL

26    **A. Witness List**

27        1. Rossell Valerio (Albertson's Loss Prevention Officer, Store #6708, 151 Woodland Pkwy,
28           San Marcos, CA) – Mr. Valerio concealed a camera in a crayon box and obtained
29           surveillance film of defendant concealing alcohol in his clothing. He summoned law

5

PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

1    enforcement to Albertsons and placed defendant under citizen's arrest on January 27,
2    2008. He is also custodian of record for the surveillance video from the incidents which
3    occurred on January 27th and 31st.

4    2. Jeffery Cruz (San Diego Deputy Sheriff) – Deputy Cruz arrested Defendant on January
5       27, 2008 at the Albertson's at 151 Woodland Pkwy, San Marcos. CA. He will testify as
6       to his observations and arrest.

7    3. Dawn Patterson (San Diego Deputy Sheriff) – Deputy Patterson assisted Deputy Cruz in
8       Defendant's January 27 arrest.

9    4. Jeffrey Dodds (Escondido Police Officer) – Responded on January 31, 2008 at 1300
10      hours to take a report re: defendant's shoplifting at the Albertson's located at 1570 West
11      Valley Pkwy, Escondido, CA. Officer Dodds did not arrest the Defendant.

12   5. Officer R. Gay (Escondido Police Officer) – Responded to the Albertsons at 1570 West
13      Valley Parkway in Escondido at 10:38 p.m. on January 31, 2008 and arrested defendant
14      for shoplifting.

15   6. Elizabeth Volz (Albertson's Manager at 1570 West Valley Parkway) – She can testify as
16      to what she saw on January 31, 2008. She will also testify that she knew Defendant from
17      his regular prior contacts at the store.

18   7. David Robbins (San Diego Deputy Sheriff) – Arrested Defendant on February 1, 2007 at
19      the Albertson's located at 1929 West San Marcos Blvd., San Marcos, CA.

20   8. Troy Eric Ludwig (Albertson's store manager in San Marcos) – He called the police just
21      prior to Defendant getting arrested in the San Marcos store.

22   9. Peter Gavin (Albertson's Loss prevention Officer in San Marcos and Oceanside) – He is
23      the custodian of record for the surveillance video obtained from those locations.

24   10. Mike Vega (Albertson Store Director in San Marcos) – Reviewed CCTV from the San
25      Marcos incident dated 2/1/2008 with Deputy David Robins.

26   11. Shannon Land (Albertson's Store Associate at 151 Woodland Parkway in Escondido,
27       CA) – Defendant made admissions to her regarding his thefts.

28

29

6
.PEOPLE'S TRIAL BRIEF; EXHIBIT LIST: WITNESS LIST; MOTIONS IN LIMINE

1    12. Renee Bernard (Albertson's Store Manager at 3450 Marron Road. Oceanside, CA) – She
2         will testify that Defendant has been entering her store for four years between 10:00 p.m.
3         and midnight.

4    13. Jennifer Bailey (Organized Retail Crime Specialist, Albertsons) – Ms. Bailey is a
5         custodian of record for Defendant's preferred membership card.

6    14. Jose Rendon Jr. (manager of Stater Bros) – Mr. Rendon observed Defendant concealing
7         alcohol in his store and called the police.

8    15. Officer M. Fullen (Oceanside PD) – Officer Fullen arrested Defendant on September 25,
9         2008 at the Stater Bros store and located 4 bottles of alcohol in his pants.

10   16. Celeste Madruga (fingerprint analyst)

11

12   **B. Exhibit List**

13   1.   Some or all video footage of Defendant and any still photos taken of Defendant the nights
14   of the incidents. Surveillance video is from Albertsons Stores located at 151 Woodland Pkwy,
15   San Marcos, CA; 1929 West San Marcos Blvd., San Marcos, CA; 1570 West Valley Parkway,
16   Escondido, CA; and, 3450 Marron Road, Oceanside. CA.

17   2.   Photographs of the interior and exterior of the store listed above as well as Stater Bros
18   located at 3770 Mission Avenue, Oceanside

19   3.   Floor plans of Albertsons and Stater Bros.

20   4.   Photographs of items seized from Defendant's vehicle and Defendant's person including
21   bottles of alcohol, football jerseys, DVDs, a mask, a knife. a wallet.

22   5.   Photographs of discarded alcohol within Albertson's

23   6.   Copy of receipts showing value of alcohol

24   7.   Copy of bulletin about Defendant created by Albertson's Loss Prevention Corporate Office

25   8.   Documents showing Defendant's preferred membership card activity.

26   9.   Certified copies of Defendant's Mug Shot Profile-Facecards and History of Inmate Sheets

27   10.  Certified copies of Defendant's prior conviction and booking packet

28   11.  Copy of fingerprint analysis

29   12.  Certified Copy of vehicle registration of Defendant's silver Acura

7

13. Certified copy of Defendant's RAP sheet (impeachment)

C. In Limine Motions

1. **To exclude all potential witnesses during the pendency of the trial while those witnesses are not testifying. (Evid. Code §777).**

2. **To exclude any reports, statements or other evidence to be used by defendant at trial that were not timely provided pursuant to Penal Code §§1054.3 and 1054.7. Alternatively, the People request a brief continuance/delay to enable the prosecutor to review the evidence and produce a meaningful cross-examination or response.**

3. **To Include defendant's statements to any of the witnesses during the investigation of these theft incidents pursuant to Evidence Code section 1220.** The People are entitled to offer any statement by Defendant. The only requirement is that it complies with the procedural safeguards of *Miranda v. Arizona*, 384 U.S. 4365 (1966). There is no requirement that the statement be an admission of guilty of any kind.

   i. Defendant's statements to law enforcement on January 27, 2009 and January 31, 2009 were not in violation of *Miranda* and should be admitted.

   Miranda warnings are only required when a person is subjected to custodial interrogation, *People v Mickey*, (1991) 54 Cal.3d 612,648. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," *Yarborough v. Alvarado*, (2004) 541 U.S. 652. When a person is subjected to questioning where there has been no formal arrest, the custodial issue turns on "how a reasonable person in the suspect's position would have understood his situation," *Berkemer v. McCarty*, (1984) 468 U.S. 420, 442. Police officers are not required to administer Miranda warnings to everyone whom they question.

8

1 Miranda warnings are required only where there has been such a restriction on a person's

2 freedom as to render him "in custody", *Oregon v. Mathiason*, (1977) 429 U.S. 492, 495.

4 It is well established that Miranda warnings are not required where a person is

5 temporarily detained for brief questioning by police. (*People v. Hill* (1974) 12 Cal.3d 731. 767:

6 *People v. Vasquez* (1993) 14 Cal.App.4th 1158, 1162-1164; *People v. Manis* (1969) 268

8 Cal.App.2d 653, 669.) A temporarily detained suspect is not in custody for Miranda purposes

9 regardless of whether officers have an uncommunicated intent to arrest supported by probable

10 cause. (*Berkemer v. McCarty* (1984) 468 U.S. 420, 442; *People v. Bellomo* (1992) 10

12 Cal.App.4th 195, 199-200; see also, *Stansbury v. California* (1994) 511 U.S. 318.)

13 In *In re Joseph R.* (1998) 65 Cal.App.4th 954, an officer detained a minor, put him

14 in handcuffs, and told him to sit in the back of a patrol car. The officer carried on another part

16 of his investigation. He returned after about five minutes, released the minor from the patrol

17 car, and removed the handcuffs. The minor then made admissions in response to the officer's

18 questions without benefit of the Miranda warnings. The appellate court affirmed the judgment

20 of conviction, holding that the questioning was not custodial. (*Id. at p. 961.*)

21 "When circumstances demand immediate investigation by police, the most useful,

22 the most available tool for such investigation is general on-the-scene questioning, designed to

24 bring out the person's explanation or lack of explanation of the circumstances which aroused the

25 suspicion of the police, and enable the police to quickly determine whether they should allow

26 the suspect to go about his business or hold him to answer charges." (*People v. Manis*, supra,

28 268 Cal.App.3d at p. 665; *People v. Haugland* (1981) 115 Cal.App.3d 248, 256.)

29 In the present case, the Defendant was detained by the police on January 27, 2008,

1  and January 31, 2008, in the course of investigation. During the January 27th detention, Deputy
2  Cruz asked that Defendant stop and talk with him. He asked that Defendant have a seat on the
3
4  cement pillar near where they were standing. Defendant was asked for identifying information,
5  as well as a simple inquiry as to "what was going on?" This was general, on-the-scene
6  questioning in response to a call regarding a shoplifting in progress at that particular location.
7
8  The answers given by Defendant elicited further investigation by the deputies. When the deputy
9  inquired as to where Defendant had parked, Defendant lied and stated that his vehicle was not
10 on the premises. Upon the Loss Prevention Officer's declaration that an Acura parked on the
11
12 premises belonged to Defendant, Deputy Cruz confirmed that the Acura was registered to
13 Defendant. It was at that time Defendant was placed in the patrol car, and Deputy Cruz
14 conducted other parts of his investigation. Following the citizen arrest by the Loss Prevention
15
16 Officer, who signed a citizen's arrest declaration, Defendant was placed under arrest. The
17 statements given to the deputies were prior to arrest while Defendant was being detained during
18 the investigation, and did not rise to the level of custodial interrogation that requires Miranda
19
20 warnings.

21       Similarly, on January 31, 2008, officers were called to a burglary in progress.
22 During the investigation, officers attempted to make contact with Defendant, who had exited the
23
24 store, turned around, and walked back inside. At that time, officers followed Defendant back
25 into the store, placed him in handcuffs, and explained that Defendant was not under arrest but
26 was being detained until they could investigate the radio call. At this time, Officer Gay asked
27
28 Defendant if he had anything illegal on his person. Defendant stated "I have some alcohol."
29 Again, Officer Gay's questions was a generalized statement by police designed to bring out a

10

person's explanation of the circumstances which aroused suspicion. The questions by Officer Gay were in the course of the immediate investigation of the suspected burglary. The detention of the defendant did not amount to a custodial interrogation which required police to Mirandize Defendant.

Courts look to a totality of the circumstances to determine whether a statement was voluntary, *Withrow v. Williams, (1993)507 U.S. 680, 694.* Statements must be neither intimidating nor "so coercive as to overcome defendant's free will or constitute 'a motivating cause' of his subsequent confession, *People v. Kelly, (1990) 51 Cal.3d 931, 952-953.* In the present case, and with respect to the January 27th detention, Defendant voluntarily responded to law enforcement that he had concealed bottles of alcohol in the front of his pants, but had removed them because he "felt as though someone was watching him". This was in response to a simple question by the deputy, "what's going on?" Similarly, on January 31st, Officer Gay asked the defendant a simple question regarding whether Defendant had "anything illegal" on his person during the investigative detention of Defendant. Again, Defendant voluntarily stated that he had bottles of alcohol on him. In both instances, there was no coercion on the part of either Deputy Cruz or Officer Gay in asking these simple investigative questions. The defendant's free will was not overcome, and he gave the information freely to law enforcement. Since, as previously discussed, these statements were in the course of detention and investigation, and not custodial interrogation, Miranda warnings were not required.

**4. To Admit Evidence that resulted from searching Defendant's vehicle on January 27, 2009 and February 1, 2009**

Defendant seeks to challenge the admission of evidence seized in searches of his

11

1   vehicle on January 27, 2008 and February 1, 2008 on 4th amendment grounds. The People
2   believe that this motion should be denied because it is untimely. However, if the Court is
3   willing to hear the 1538.5 motion, then the People believe that the evidence should be admitted
4   
5   because both searches were not in violation of the 4th amendment.

6   i.   The Evidence Seized in these Searches should be admitted because any motion to
7   
8        suppress is now untimely

9        The San Diego Superior Court Rules, Division III "Criminal" clearly establish a
10  timeline for when PC1538.5 motions should be filed. According to Rule 3.2.3(A), "At the post-
11  bindover arraignment on the information or arraignment on an indictment, the judge will set a
12  filing deadline for all pretrial motions which will be 21 calendar days after the arraignment or
13  other such date as the judge may, for good cause, assign." Rule 3.2.3(B) adds that "All such
14  motions, including motions to join in motions, must be filed no later than the close of business
15  on the assigned date." Penal Code section 1538.5 favors pretrial litigation and resolution of
16  suppression motions. A defendant has a very limited right to bring a suppression motion during
17  trial – only when "opportunity for this motion did not exist or the defendant was not aware of
18  the grounds for the motion . . ." before trial. (Pen. Code, § 1538.5, subd. (h).)

19       In this case the People believe that the evidence seized in the searches should be
20  admitted and not subject to a 1538.5 hearing because a motion to suppress on Fourth
21  Amendment grounds is untimely. The Defendant did have an opportunity to bring this motion
22  as the motion cut-off date was set for March 14, 2008. Defendant never filed a motion.
23  Furthermore, the Defendant was aware of the grounds for the motion as the evidence of the
24  underlying basis for the search is contained in the police reports which were discovered to
25  Defendant well before the motion cut-off date. The People feel that bringing 1538 motions
26  within the time set by the local rules is important for a number of reasons. First, it discourages
27  forum shopping. Second, it allows the People to adequately prepare their case and decision
28  regarding settlement offers. Third. it allows the People to prepare an adequate response to
29  Defense counsel's motion.

1      ii.    The Vehicle Search of January 27. 2008

2             i. **Factual Background**

3             On January 27, 2009, Deputy Cruz received a call to investigate a suspicious person at
4      the Albertson's located on Woodland Parkway, San Marcos. When he arrived, Deputy Cruz
5      contacted the Albertson's Loss Prevention Officer (LPO) Rossel Valerio. Valerio told Deputy
6      Cruz that he had seen Defendant conceal alcohol in front of his pants. Deputy Cruz contacted
7      Defendant as he exited Albertsons. Defendant consented to a search of his person. Deputy Cruz
8      asked Moore where his vehicle was parked and Defendant said it was at the apartments across
9      the street. LPO Valerio informed the police that Defendant's vehicle was the gray Acura MDX
10     utility vehicle parked in the parking lot. Defendant adamantly denied that was his vehicle.
11     Deputies conducted a records check and discovered that the Acura was registered to Defendant.
12     Defendant was placed under arrest. Using a key found on Defendant's person, Deputy Cruz
13     conducted a search of the Acura. Inside he found 36 bottles of alcohol, 4 DVDs of "Good Luck
14     Chuck", 5 DVDs of "Saw IV", 5 DVDs of "Game Plan", 4 DVD's of "The Kingdom," and one
15     DVD of "Pirates of the Caribbean." He also found a .45 caliber round in the map pocket, a
16     wallet belonging to Defendant with $1081 inside, and a large knife.

17             ii. **The Defendant has the Burden of Demonstrating a Legitimate Expectation of**
18                 **Privacy in the Property Seized or the Place Searched.**

19             Fourth Amendment rights are personal rights which may be asserted only by a
20     defendant who has a legitimate expectation of privacy in the invaded place or the thing searched.
21     (*Rakas v. Illinois* (1978) 439 U.S. 128, 133-134, 143.) Thus, to succeed on a motion to exclude
22     evidence based on a claim of unreasonable search and seizure, the defendant must first establish
23     a personal, reasonable, and legitimate expectation of privacy in the particular area searched or
24     thing seized. (Cal. Const., art. I, § 28, subd. (d); *United States v. Payner* (1980) 447 U.S. 727,
25     731; *People v. Roybal* (1998) 19 Cal.4th 481, 507; *In re Lance W.* (1985) 37 Cal.3d 873; *People*
26     *v. Daan* (1984) 161 Cal.App.3d 22.) The defendant bears the burden of showing a legitimate
27     expectation of privacy. (*People v. Roybal, supra; People v. McPeters* (1992) 2 Cal.4th 1148,
28     1172.) This burden requires the defendant to show two things. First, the defendant must hold
29     an actual (subjective) expectation of personal privacy. Second, this expectation must be one that

13
PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

1    society is prepared to recognize as reasonable. In other words, the defendant's subjective
2    expectation of privacy must be objectively reasonable under the circumstances. (*Smith v.*
3    *Maryland* (1979) 442 U.S. 735, 740.)

4              The courts have specifically rejected several theories advanced to broaden the
5    legitimate expectation of privacy of defendants whose personal rights have not been violated by
6    police conduct. For example, mere presence at the search scene does not establish a defendant's
7    legitimate expectation of privacy. (*Minnesota v. Carter* (1998) 525 U.S. 83; *Rakas v. Illinois*,
8    *supra*, 439 U.S. at pp. 140-142.) Nor does the defendant gain an expectation of privacy simply
9    because he or she is charged with possession of the property sought to be suppressed. (*United*
10   *States v. Salvucci* (1980) 448 U.S. 83, 85; *People v. Nelson* (1985) 166 Cal.App.3d 1209; see
11   also, *People v. Ooley* (1985) 169 Cal.App.3d 197; *People v. Root* (1985) 172 Cal.App.3d 774.)
12   Even the defendant's ownership of the property itself is insufficient to create a legitimate
13   expectation of privacy. (*United States v. Salvucci, supra*; *People v. McPeters* (1992) 2 Cal.4th
14   1148, 1172.)

15              iii. **Defendant's earlier disclaimer of possession surrenders privacy**

16             It is well-established that Fourth Amendment rights are personal and may not be
17   asserted vicariously. (*Alderman v. United States* (1969) 394 U.S. 165, 174.) A defendant's
18   disclaimer of possessory interest in an area searched defeats any assertion of a legitimate
19   expectation of privacy. Thus, any such disclaimer, whether at the time of the search or at the
20   later suppression hearing, bars defendant from moving to suppress the fruits of such search.

21             The appellate court in *People v. Stanislawski* (1986) 180 Cal.App.3d 748, held the
22   defendant's disclaimer to officers of possessory interest in the property searched barred his
23   insistence upon an expectation of privacy. "It is settled law that a disclaimer of proprietary or
24   possessory interest in the area searched or the evidence discovered terminates the legitimate
25   expectation of privacy over such area or items." (*Id.* at p. 757.) Similarly, in *People v. Dasilva*
26   (1989) 207 Cal.App.3d 43, the appellate court held: "We will not extend California law to
27   permit a defendant who disclaims possession of an object to take a contrary position in an effort
28   to attain standing to seek to exclude that object from evidence." (*Id.* at p. 49; similarly see
29   *People v. Mendoza* (1986) 176 Cal.App.3d 1127, 1133 [denial of ownership "virtually the

14

equivalent of an implied consent to search"]; distinguish *People v. Dachino* (2003) 111 Cal.App.4th 1429 [disclaimer of ownership of item found did not deprive defendant of expectation of privacy in place searched]; contra *People v. Allen* (1993) 17 Cal.App.4th 1214, 1222-1223 [error to rely on the disclaimer by defendant to the exclusion of all other evidence in determining if defendant had a reasonable expectation of privacy].)

In this case Defendant claimed that his vehicle was parked across the street and denied that the Acura searched was his. In giving up his possessory interest in the vehicle, Defendant waived his ability to assert an expectation of privacy in the search of the Acura. Therefore, evidence of the items found as a fruit of the search should be admitted into evidence.

**iv. The Search of Defendant's vehicle was Proper Because the Contraband was in Plain View**

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to [search and] seizure and may be introduced in evidence." (*Harris v. United States* (1968) 390 U.S. 234, 236; *People v. Camacho* (2000) 23 Cal.4th 824, 831-838; *North v. Superior Court* (1972) 8 Cal.3d 301, 306.) " 'A search implies a prying into hidden places for something that has been intentionally put out of the way.' . . . 'Things that are openly visible do not require a search for their discovery.' . . . The Fourth Amendment does not prohibit the seizure of evidence 'which is readily visible' and 'accessible' to the police." (*People v. Superior Court (Aslan)* (1969) 2 Cal.App.3d 131, 135, citations omitted.)

The right of officers to seize items in plain view extends to objects that officers reasonably believe will aid in the defendant's apprehension or conviction – as well as to contraband and stolen property. (*Guidi v. Superior Court* (1973) 10 Cal.3d 1, 11-14; *People v. Hill* (1974) 12 Cal.3d 731, 755-756.) All that is required is that the incriminating character of the item be immediately apparent to the officer. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119.)

An example of a plain view seizure is found in *People v. LeBlanc* (1997) 60 Cal.App.4th 157. Officers with an arrest warrant were handcuffing the defendant in the threshold to a motel room while standing in the doorway. They saw two cocaine pipes in plain

1 view inside the room. The court held the officers were entitled to intrude further into the room

2 to seize the two pipes. (*Id.* at pp. 163-166.) But they were not entitled to search the remainder

3 of the room on probable cause alone unless exigent circumstances existed. (*Id.* at pp. 166-167.)

4    An item in plain view does not need to be "inadvertently" discovered before it

5 may be seized. (*Horton v. California* (1990) 496 U.S. 128, 130; *North v. Superior Court, supra,*

6 8 Cal.3d at pp. 307-308.) Indeed, even without a search warrant a plain-view seizure is not

7 presumptively invalid. (*Guidi v. Superior Court, supra,* 10 Cal.3d at p. 15.)

8    When officers have the right to seize items in plain view, they also have the right

9 to inspect and photograph those items subject to seizure. (*People v. Roberts* (1956) 47 Cal.2d

10 374, 380; *People v. Williams* (1988) 198 Cal.App.3d 873, 888-892; *People v. Superior Court*

11 *(Aslan), supra,* 2 Cal.App.3d at p. 134.) Officers do not lose the right to seize evidence in plain

12 view merely because they wait for two or three hours to take physical possession of it, or

13 because they temporarily leave the location at which they made their observation. (*People v.*

14 *Hamilton* (1980) 105 Cal.App.3d 113, 118; *People v. Superior Court (Quinn)* (1978) 83

15 Cal.App.3d 609, 617; *People v. Superior Court (Irwin)* (1973) 33 Cal.App.3d 475, 480.)

16    In this case, Deputy Cruz's search of Defendant's vehicle without a warrant was

17 also valid because contraband was in plain view. A large bottle of alcohol was located on the

18 front right passenger floor which could be clearly seen by looking into the vehicle's window.

19 Additionally, multiple bottles of alcohol were also visibly located on the floor behind the

20 driver's seat. Also a knife handle could be seen sticking up between the driver's seat and the

21 front center console.

22    **v. The Warrantless Search of Defendant's Vehicle was Proper because it was**

23     **Supported by Probable Cause**

24    "Hornbook law states that the Fourth Amendment to the United States

25 Constitution permits the warrantless search of an automobile with probable cause. [Citations.]"

26 (*People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059.) When police officers have probable

27 cause to believe an automobile contains contraband or evidence of a crime, or is itself an

28 instrumentality of a crime, they may search the vehicle for such contraband or evidence without

29 a search warrant. (*United States v. Ross* (1982) 456 U.S. 798; *People v. Chavers* (1983) 33

Cal.3d 462. 468-469.)

> [T]he scope of the warrantless search authorized by [the so-called "automobile exception"] is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

(*United States v. Ross*, *supra*, 456 U.S. at p. 825.)

The Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238.)

Under *Ross*, a warrantless vehicle search based on probable cause extends to closed containers, as well as the personal belongings of any passengers within the vehicle. The only limitation is that the scope of the search be reasonably related to the object sought. (*United States v. Ross*, *supra*, 456 U.S. at p. 824; *Wyoming v. Houghton* (1999) 526 U.S. 295.) And no warrant is required even if the probable cause relates solely to a container within the vehicle, contrary to earlier cases. (*California v. Acevedo* (1991) 500 U.S. 565.) A probable cause search also covers the vehicle's trunk. (*People v. Hunter* (2005) 133 Cal.App.4th 371, 381-382; *People v. Hunt* (1990) 225 Cal.App.3d 498, 509.)

Because of the reduced expectation of privacy in vehicles and their ready mobility, no further showing of exigent circumstances is required before conducting a probable cause search. (*Maryland v. Dyson* (1999) 527 U.S. 465; *Pennsylvania v. Labron* (1996) 518 U.S. 938; *California v. Carney* (1985) 471 U.S. 386; *Michigan v. Thomas* (1982) 458 U.S. 259, 261.)

In this case Deputy Cruz had probable cause to believe that Defendant's vehicle contained contraband. Upon arriving at the scene Deputy Cruz was told that Defendant was a frequent shoplifter in Albertson's. Once Defendant was detained, he admitted that he put alcohol in the front of his pants but then thought people were following him so he took it out. Deputy Cruz asked which vehicle was his. Defendant denied that the silver Acura in the parking lot was his vehicle. At that point, the Loss Prevention Officer Rosell Valerio showed Deputy Cruz surveillance video showing Defendant going in Albertson's, to the alcohol aisle, back out to his vehicle, then back in Albertson's again. Defendant's admission, Valerio's statements, and

1  the surveillance video provided Deputy Cruz with reason to believe there was a fair probability
2  that contraband or evidence of a crime would be found in Defendant's vehicle. Thus he had
3  probable cause to search Defendant's vehicle.

4      iii.    The Vehicle Search of February 1, 2008

5              **i. Factual Background**

6              On February 1, 2009, Defendant entered Albertsons located 1929 West San
7  Marcos Blvd.  Manager Troy Ludwig called police when he saw Defendant in the store.  Deputy
8  Robins contacted Defendant just as he was leaving the store but had not yet stepped outside.
9  Deputy Robins chased Defendant through the store as Defendant discarded bottles of alcohol.
10 Defendant was detained and Deputy Robins spoke with Troy Ludwig.  Ludwig explained that
11 Albertson's Corporate Los Prevention Department had sent a flyer about Defendant. The flyer
12 explained that Defendant enters Albertsons stores and steals bottles of high-end liquor.
13 Defendant conceals the bottles in his pants and take the alcohol to his silver Acura MDX with
14 license plate BLKPNTHR.  Defendant places the stolen bottles of alcohol in his car and then
15 reenters the store and steals again.  After gathering that information, Deputy Robbins placed
16 Defendant under arrest.  Using keys found on Defendant's person, Deputy Robins entered
17 Defendant's vehicle located in the parking lot.  Inside Deputy Robbins found two bottles of
18 alcohol inside a plastic container in the trunk.  He also found a blue and black mask and gloves
19 in the rear passenger compartment.

20          **ii. The Search was Proper because Deputy Robins had Probable Cause to**
21              **Believe that Contraband would be found in Defendant's vehicle.**

22             As stated above when police officers have probable cause to believe an automobile
23 contains contraband or evidence of a crime, or is itself an instrumentality of a crime, they may
24 search the vehicle for such contraband or evidence without a search warrant.  (*United States v.*
25 *Ross* (1982) 456 U.S. 798; *People v. Chavers* (1983) 33 Cal.3d 462, 468-469.)

26             In this case Deputy Robins had probable cause to believe that Defendant's vehicle
27 contained contraband.  Through information received from Manager Ludwig, Deputy Robins
28 was aware that Defendant has been entering Albertsons stealing bottles of high end liquor by
29 concealing them in his pants and then placing them in his vehicle and then reentering the store

18
PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

1   and repeating the process. Deputy Robins had chased Defendant through the store and observed
2   him remove bottles of high end liquor from his pants. Based on the background information
3   provided by Troy Ludwig as well as the fact that Deputy Robins observed Defendant with
4   alcohol in his pants he had reason to believe there was a fair probability that contraband or
5   evidence of the petty theft/burglary would be found in Defendant's vehicle.

6

7   **5. To Admit Evidence of Defendant's Uncharged Acts of Entering and Stealing From**
8   **Albertson's Stores.**

9           Any relevant fact in dispute, other than conduct, can be proved by uncharged acts,
10   and even conduct can be proved so long as no inference as to character is required. (*People v.*
11   *Thompson* (1979) 98 Cal.App.3d 467.) Evidence Code section 1101(b) allows the admission of
12   evidence of uncharged misconduct when relevant to prove something other than character or
13   disposition. Evidence Code section 1101(b) states:

14           Nothing in this section prohibits the admission of evidence that a person
         committed a crime, civil wrong, or other act when relevant to prove some fact
15         (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or
16         absence of mistake or accident or whether a defendant in a prosecution for an
         unlawful sexual act or attempted unlawful act did not reasonably and in good faith
17         believe that the victim consented) other than his disposition to commit such act.
18

19           The factors a court must consider in determining the admissibility of such
20   evidence are threefold: "As with other types of circumstantial evidence, its admissibility
21   depends upon three principal factors: (1) the *materiality* of the fact sought to be proved or
22   disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and
23   (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*People v.*
24   *Thompson* (1980) 27 Cal.3d 303, 315.)

25   **i. Materiality of Facts Sought to be proved**

26           "In order to satisfy the requirement of *materiality*, the fact sought to be proved
27   may be either an ultimate fact in the proceeding or an intermediate fact 'from which such
28   ultimate fact may be presumed or inferred.' " (*People v. Thompson, supra*, at 315.) An element
29   of the offense is an ultimate fact. (*Id.*) Intent is also an ultimate fact. (*People v. Nible* (1988)

19

1    200 Cal.App.3d 838, 846 [evidence of prior burglary and a sexual assault admitted to prove
2    defendant's intent when he entered a woman's home in current case].) Knowledge. common
3    plan or scheme and motive are intermediate facts, from which the ultimate fact can be inferred.

4              In the instant case, the fact sought to be proved by Defendant's acts are the intent,
5    motive. and common scheme or plan. These facts are material. Intent is a material fact because
6    it is an essential element of the charge. To be guilty of burglary, Defendant must have had the
7    intent to steal when he entered each Albertson's store. (*See* California Penal Code section 459.)
8    Defendant's motive (financial gain) is material because it is an intermediate fact that tends to
9    prove an ultimate fact. It tends to prove that he entered the Albertson's with intent to steal. The
10   fact that Defendant had a common scheme or plan is also an intermediate fact that infers an
11   ultimate fact. If Defendant had a scheme to steal from Albertson's on a regular basis (which the
12   prosecution believes he did) then that tends to show that Defendant had the intent to steal on
13   each particular occasion in which he is charged. Thus, the three facts the prosecution intends to
14   show by introducing Defendant's other acts of stealing are material to the crimes charged.

15   ii. **Relevance of uncharged acts**

16             Relevance requires that the act must have a tendency to prove or disprove the
17   material fact. (*People v. Thompson, supra*, at 315.) This means that the uncharged conduct
18   must tend to prove either an ultimate fact, such as an element of the offense or identity, or the
19   tendency to prove an intermediate fact, such as motive, common plan or scheme, knowledge. or
20   absence of mistake and accident, which will tend to prove the ultimate fact of a required ele-
21   ment.

22             Courts look for a direct relationship between the uncharged wrongful act and the
23   component of the crime sought to be proved. (*People v. Haston* (1968) 69 Cal.2d 233, 244-
24   245.) Evidence Code section 210 states:

25        Relevant evidence means evidence, . . . , having any tendency in reason to prove
26        or disprove any disputed fact that is of consequence to the determination of the
          action.
27

28             Defendant's past acts of stealing are relevant to prove that Defendant had the
29   requisite intent for burglary. That is, they prove that Defendant entered Albertson's and Stater

                                                    20

1  Bros. on each of the occasions charged (January 27, January 31, February 1, and September 25)
2  with the intent to commit larceny. (See Penal Code section 459.)  The prior acts prove the
3  requisite intent both directly and indirectly.

**1. Defendant's prior acts caught on video prove his intent directly.**

5  The introduction of other-crimes evidence frequently is relevant to prove intent
6  because of the assumption that people act with a similar intent in similar circumstances. The
7  California Supreme Court explained in *People v. Robbins* (1988) 45 Cal.3d 867, at page 879:

> We have long recognized "that if a person acts similarly in similar situations, he
> probably harbors the same intent in each instance" [citations], and that such prior
> conduct may be relevant circumstantial evidence of the actor's most recent intent.
> The inference to be drawn is not that the actor is *disposed* to commit such acts;
> instead, the inference to be drawn is that, in light of the first event, the actor, at the
> time of the second event, must have had the intent attributed to him by the
> prosecution.

14  Furthermore, no requirement exists that for purposes of establishing defendant's
15  intent or motive both the charged and uncharged acts be identical or nearly identical. (*People v.*
16  *Thompson, supra*, 27 Cal.3d at 319; *People v. Harvey* (1984) 163 Cal.App.3d 90, 104-105.)
17  Rather, only substantial similarity is necessary to provide the required "link" in the inference-
18  drawing process. (*People v. Thompson, supra*, at 319-320, fn. 23; *People v. Nible, supra*, 848-
19  850.)

20  In the instant case, Defendant's prior crimes of stealing from Albertson's are
21  extremely probative of his intent with regard to the charged crimes. Defendant has been
22  documented on Albertson's CCTV numerous times entering their stores and concealing liquor.
23  During those prior acts, Defendant was wearing almost the exact same clothing (football jersey
24  and baggy jeans), entering the store at almost the same time (around 10:30 p.m. – 11 p.m. at
25  night when the store is not as busy), behaving similarly (waiting in the liquor aisle until no one
26  is around and then concealing the alcohol in his pants as well as entering and exiting the store
27  numerous times to transport the liquor), and stealing the same product (high-end bottles of
28  alcohol). A jury could easily infer, and the prosecution will ask the jury to infer, that Defendant
29  had the same intent during the charged acts that he did in the prior acts caught on video tape. A
reasonable jury could easily come to that conclusion.

**2. Defendant's prior acts caught on video prove his intent indirectly by establishing motive.**

Evidence of a defendant's commission of an uncharged criminal act or acts is admissible to establish motive. (*People v. Thompson, supra,* at 315, fns. 13, 14.) Motive is always subject to proof and material, and wide latitude is permitted in admitting evidence of its existence. (*People v. Pertsoni* (1985) 172 Cal.App.3d 369, 375; *People v. Daniels* (1971) 16 Cal.App.3d 36, 46.)

The video evidence of Defendant's prior acts of steeling uncovers the extent to which Defendant financially benefited from his actions, i.e. his motive. The video evidence shows that Defendant was involved in stealing liquor for financial gain. They show a regular pattern of Defendant steeling mass quantities of liquor on a regular basis. A jury could conclude that he had a similar motive on January 27, January 31, February 1, and September 25. This motive tends to show the requisite intent for burglary and thus, is relevant.

**3. Defendant's prior acts caught on video prove his intent indirectly by establishing his common scheme or plan.**

The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done. (*People v. Ewoldt* (1994) 7 Cal. 4th 380, 393, citing 1A Wigmore, Evidence (Tillers Rev. ed. 1988 102. p. 1666).) The existence of such a design or plan may be proved circumstantially by evidence that the defendant has performed acts having "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." (*Id.* at 293.) Evidence of common design or plan, therefore, is not used to prove identity or intent but rather to prove that defendant engaged in the conduct alleged to constitute the charged offense. (*Id.*)

To be relevant, the plan, as established by the similarities between the charged and uncharged offenses *need not be distinctive or unusual.* Evidence that the defendant possessed a plan to commit the type of crime with which he or she is charged is relevant to prove the defendant employed that plan and committed the charged offense. (*People v. Balcom* (1994) 7 Cal. 4th 414, 424.) Evidence that the defendant committed uncharged criminal acts that are

1  similar to the charged offense may be relevant if these acts demonstrate circumstantially that the
2  defendant committed the charged offense pursuant to the same design or plan he or she used in
3  committing the uncharged acts. *Id.* Unlike evidence of uncharged acts used to prove identity,
4  the plan need not be unusual or distinctive; it need only exist to support the inference that the
5  defendant employed that plan in committing the charge offense. *Id.*, citing *Ewoldt* at 403.

6      Several cases have discussed the admission of prior uncharged acts in order to
7  prove a common plan. (*People v. Balcom*, 7 Cal.4th 414 [similar rape by defendant to prove a
8  charged rape]; *People v. Ing* (1967) 65 Cal.2d 603 [doctor administered injections to women
9  patients then raped them was admitted to prove similar rape]; *People v. Archerd*, 3 Cal.3d 615
10 [defendant murdered all his wives by insulin injections]; *People v. Lisenba* (1939) 14 Cal.2d
11 403 [prior murder of defendant's wife, also by snakebite, for purpose of insurance indemnity];
12 *People v. Thomas* (1978) 20 Cal.3d 457 [prior molest of victim's sister met criteria for
13 admissibility but excluded because of remoteness]. In Thomas, the Court stated that evidence of
14 prior misconduct committed to a person other than the victim of the charged offense is
15 admissible to show a common plan "where the prior offenses (1) are not too remote in time, (2)
16 are similar to the offenses charged, and (3) are committed upon persons similar to the
17 prosecuting witness." (*Id.*)

18      The video evidence establishes the requisite intent for burglary indirectly by
19 showing Defendant acted with a common scheme or plan. The video evidence establishes that
20 Defendant follows a clear plan or scheme regarding his thefts. Defendant enters Albertson's at
21 night when there are fewer employees on duty than usual. He always enters between 10.00 p.m.
22 and midnight. He always wears baggy jeans and a Carolina Panther's jersey. Presumably, the
23 baggy attire is to better hide the product in which he is stealing. Once in the store he proceeds
24 directly to the liquor aisle where he hides expensive bottles of liquor in his clothing. He places
25 the liquor in his pants using the belt line to hold them in place and uses the football jersey to
26 hide the liquor from store employees and other customers. He exits the store with the liquor,
27 deposits it in his Acura, and re-enters the store and repeats the process. During the commission
28 of these thefts he makes small talk with the Albertson's employees. They know him because of
29 the frequency in which he appears there.

1       The charged acts are entirely consistent with Defendant's scheme. Three of the
2    arrests take place at Albertson's (where Defendant usually steals), and one arrest at Stater Bros,
3    both of them being grocery stores. During all three arrests that lead to the charged acts,
4    Defendant was wearing baggy jeans and a Carolina Panthers jersey and entered Albertson's
5    between 10:00 p.m. and midnight. Defendant was following his regular scheme when arrested
6    for the acts charged. Thus, the scheme tends to show Defendant had the requisite intent for
7    burglary when he was arrested on January 27, January 31, and February 1.

8                   **4. Defendant's prior acts caught on video prove his intent**
9                   **indirectly by establishing his modus operandi.**

10      Defendant had a clear mode of operation while committing the charged acts and
11   the prior acts caught on video surveillance. Defendant followed a clear pattern, from the time of
12   day to the clothes he wore when he was committing the acts. This mode of operation also
13   indirectly shows that Defendant possessed the requisite intent for burglary on January 27,
14   January 31, and February 1.

15                  **iii. Policies for exclusion**

16      Once the court has determined that evidence of an uncharged act tends to prove a
17   material fact that is in dispute, the question whether any extrinsic policy requires exclusion must
18   be addressed. (*People v. Thompson, supra,* 27 Cal.3d at 315.) While often referred to as the
19   "Evidence Code section 352" criteria governing admission, the analysis encompasses more than
20   is defined in section 352. The requirement that the uncharged conduct not contravene any
21   policy barring admission takes into account three policies: (1) policies barring evidence which
22   proves guilt by disposition, (2) policies barring use of prejudicial cumulative evidence, and (3)
23   the statutory policy, Evidence Code section 352. (*People v. Bigelow* (1984) 37 Cal.3d 731, 747.)

24      First, in considering whether the uncharged conduct proves guilt by disposition,
25   the court is required to compare the importance of the evidence to the prosecution's case with
26   the danger of prejudice. (*People v. Evers* (1992) 10 Cal.App.4th 588, 599.) Next, if the offered
27   evidence is merely cumulative with respect to other evidence which the prosecution could use to
28   prove the same point, it should be excluded. (*People v. Thompson, supra,* at p. 318.) Referred
29   to as the "rule of necessity," evidence that is merely cumulative is inadmissible to prevent

                                         24

1   prosecutorial overkill. (See *People v. Nible, supra.* 200 Cal.App.3d at 850.) Lastly, Evidence
2   Code section 352, states:

>     The court in its discretion may exclude evidence if its probative value is substan-
>     tially outweighed by the probability that its admission will (a) necessitate undue
>     consumption of time or (b) create substantial danger of undue prejudice, of con-
>     fusing the issues, or of misleading the jury.

        The probative value of the uncharged acts has to be evaluated individually in each
case. Two principles bear noting. The term "prejudicial" should be defined and it must be
emphasized that the probative value must be substantially outweighed by prejudice.

        All relevant evidence which points to guilt is prejudicial to the defendant. The
fact that evidence of uncharged misconduct may prejudice the defendant in the minds of the
jurors is no ground for exclusion. (*People v. Peete* (1946) 28 C.2d 306, 315.) The "prejudice"
referred to in Evidence Code § 352 applies to evidence which uniquely tends to evoke an
emotional bias against a defendant and has little effect on the issues. "Prejudicial is not
synonymous with damaging." (*People v. Brogna* (1988) 202 Cal.App.3d 700, 709-710, quoting
*People v. Yu* (1983) 143 Cal.App.3d 358, 377.)

        The principal factor affecting the probative value of the uncharged conduct is the
tendency of such acts to demonstrate the theory under which they are offered. (*People v.
Ewoldt, supra.* 7 Cal.4th at p. 404.) In that case, the Court concluded there was a strong
tendency for the uncharged sexual molestations of the victim's sister to demonstrate a common
plan to molest. (*Id.*) When the source of the uncharged acts is independent of the evidence of
the charged offense, the probative value of that uncharged conduct is increased. (*Id.*) For
example, if a witness to the uncharged conduct provided a detailed report without being aware
of the charged offense. little risk exists that the witness was improperly influenced by the current
charges. This fact enhances the probative value of the uncharged conduct. (*Id.*) Probative
value is additionally increased if independent evidence exists of additional instances of similar
misconduct. (*Id.* at p. 405.) Further, the potential for prejudice decreases when testimony about
the uncharged acts is "no stronger and no more inflammatory than the testimony concerning the
charged offense." (*People v. Ewoldt, supra,* at p. 405.)

        The question whether any extrinsic policy requires exclusion must be considered

25

1    by keeping in mind the statutes permitting introduction of uncharged act evidence. Those
2    statutes are clear, that the evidence "is admissible." Assuming the criteria are met. (See, Evidence
3    Code section 1101(b).) Most significantly, once the court finds that the uncharged acts are both
4    material and relevant, Evidence Code section 351 mandates that "all relevant evidence is
5    admissible."

6    The evidence sought to be admitted (Defendant's prior acts of stealing
7    documented on surveillance video) is no more prejudicial than the crimes charged. In fact, the
8    crimes charged are identical to the acts captured by surveillance. On the other hand, the video
9    surveillance is extremely probative to the facts sought to be proved. The prior uncharged acts
10   directly show Defendant's intent and establish Defendant's motive, common scheme or plan,
11   and modus operandi. Thus, the probative value of the surveillance is not outweighed by its
12   prejudice.

13   **6. To include reference to defendant's convictions or misdemeanor conduct involving crimes**
14   **of moral turpitude to impeach his credibility should he elect to testify at trial.**

15   In a criminal case where the defendant testifies on his own behalf, his prior convictions for
16   crimes of moral turpitude may be used for impeachment as they illustrate a defendant's "readiness to do
17   evil." *(People v. Wheeler* (1992) 4 Cal. 4th 284.) Additionally, any prior misdemeanor conduct
18   involving moral turpitude is admissible to impeach. *See id.* Defendant was convicted of Carring a
19   Concealed Firearm, a crime of moral turpitude, on January 28, 2002. Additionally, Defendant was
20   convicted of misdemeanor Petty theft with a Prior on March 16, 2009, misdemeanor petty theft with a
21   prior on August 13, 1998, and misdemeanor petty theft on August 5, 1997. Thus, if Defendant testifies
22   on his own behalf, the People request permission to impeach defendant with his felony conviction and
23   misdemeanor conduct.

24

25   **7. To *include* proof of Defendant's prior misdemeanor convictions as delineated above**
26   **during the priors proof phase of the trial.**

27   Pursuant to Evidence Code section 1280, these records are admissible as public records with proper
28   certification that the document was prepared by a public employee in the course of employment. No
29   custodian is needed. (People v. Duran (2002) 97 Cal.App.4th 1448). Additionally, evidence Code

26
PEOPLE'S TRIAL BRIEF; EXHIBIT LIST; WITNESS LIST; MOTIONS IN LIMINE

1    Section 1530-31 allows authentication of these public records through testimony by a public employee

2    that the copy is a correct copy of the original. Additionally, Evidence Code section 452(b) makes a

3    certified copy of an official record of conviction "admissible ... to prove the commission ... of an offense,

4    prior conviction, service of a prison term, or other act, condition or event recorded by the record." (See

5    People v. Duran (2002) 97 Cal.App.4th 1448.)

6

7    **8. Bifurcation of Priors, Admission of Priors, Waiver of Jury Trial on Priors.**

8         The People request that the Court inquire as to whether Defendant intends to admit his prior

9    convictions as delineated above if guilt is established or whether he intends to seek a bifurcated trial. If

10   the latter is his option, so that the jury may be properly informed as to the proposed length of their

11   service and to be properly approached in *voir dire*, the People request that the Court inquire if the

12   decision has been made whether he wishes a jury to decide if his conviction in fact occurred.

13

14   Dated:  6/9/09

15

16                                                         Respectfully submitted,

17                                                         BONNIE M. DUMANIS

18                                                         District Attorney

19

                                                           By: (Chandelle Kon

20                                                              CHANDELLE KONSTANZER

21                                                              Deputy District Attorney
                                                              Attorney for Plaintiff

22

23

24

25

26

27

28

29

                                                  27